**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| **JINGYU CHEN,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   **Civil Action No. 19-cv-05387 (PMH)** |
| | ) |
| **YONG ZHAO CAI**, *et al.*, | ) |
| | ) |
| Defendants. | ) |

_____

**DEFENDANT ORGANIZATIONS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS**
**THE SECOND AMENDED COMPLAINT**

Terri E. Marsh
HUMAN RIGHTS LAW FOUNDATION
1701 Rhode Island Ave. NW
Suite 4-717
Washington D.C. 20036
Tel.: (202-697-3858)
Email: Terri.marsh.hrlf@gmail.com

Dated: February 16, 2021

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

INTRODUCTION ....................................................................................................................3

STANDARD OF REVIEW.........................................................................................................4

ARGUMENT...........................................................................................................................5

I. Plaintiff's SAC Does Not State a Claim Against the Defendant Organizations under a Theory of Respondeat Superior ...........................................................................................................5

    A. The SAC Does Not Establish an Employment Relationship Between Any Defendant Organization and Cheung.................................................................................................6

    B. The SAC Presents No Facts to Show That the Alleged Misconduct Was within the Scope of Any Duty the Employee Had to the Defendant Organizations....................................6

II. Plaintiff Has Not Stated a Claim Pursuant to §§ 1581 and/or 1589(b) of the Trafficking Victims Protection Reauthorization Act....................................................................................10

    A. Plaintiff Has Not Pleaded the Elements of a Peonage Claim under § 1581. ...........................11

    B. Plaintiff Has Not Pleaded the Elements of a Forced Labor Claim under § 1589(b)...............11

III. The RICO Claims Do Not Satisfy the Applicable Pleading Requirements ...............................16

    A. The Predicate Racketeering Acts Have Not Been Adequately Pleaded. ...................................16

    B. No "Pattern" Has Been Adequately Pleaded..................................................................17

    C. Plaintiff Has Not Adequately Alleged That She Was Injured as a Result of RICO Violations by the Defendant Organizations..................................................................................19

    D. Plaintiff Has Not Adequately Alleged That the Defendant Organizations Were Involved with or Managed the Illicit Affairs of an "Enterprise." ....................................................19

IV. Plaintiff Has Not Stated Claims for Negligent Hiring, Supervision, or Retention. ....................21

    A. The SAC Does Not Allege That the Defendant Organizations Had Notice of Cheung's Supposed Propensity for Sexual Violence or Other Inappropriate Conduct..........................22

    B. The SAC Does Not Allege that Plaintiff's Injuries Occurred on the Premises of the Defendant Organizations. ...............................................................................................23

V. Plaintiff Has Not Adequately Pleaded a Claim for Negligent Security.........................................24

CONCLUSION.......................................................................................................................25

i

## TABLE OF AUTHORITIES

**Cases**

*Adorno v. Corr Servs. Corp.* 312 F. Supp.2d 505 (S.D.N.Y. 2004) ........................................8, 9

*Agency Holding Corp. v. Malley-Duff & Assoc, Inc.*, 483 U.S. 143 (1987) ...................................17

*Amendolare v. Shenkers Int'l Forwarders, Inc.,* 747 F. Supp. 162 (E.D.N.Y. 1990) ...................17

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ............................................................................. passim

*Bailey v. State of Alabama*, 219 U.S. 219 (1911) ............................................................. 11, 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)............................................................... passim

*Biggs v. City of New York*, 2010 WL 4628360 (S.D.N.Y. 2010).......................................... 21, 23

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, (2d Cir. 1999)........................18

*Cortec Inds., Inc.* v. *Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991).........................................14

*Crab House of Douglaston, Inc. v. Newsday, Inc.*, 418 F. Supp.2d 193 (E.D.N.Y 2006) ............21

*Cruz v. FXDirectDealer*, LLC, 720 F.3d 1150 (2d Cir. 2013) ...................................................16

*De Sole v. Knoedler Gallery, LLC*, 137 F. Supp.3d 387 (S.D.N.Y. 2015) ....................................5

*DeFalco v. Bernas,* 244 F. 3d 286 (2d Cir. 2001)....................................................................20

*Doe v. Alsaud*, 12 F. Supp.3d 674 (S.D.N.Y. 2014).......................................................... 5, 7, 22

*Ehrens v. Lutheran Church*, 385 F.3d 232 (2d Cir. 2004) ........................................................23

*First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ..............................19

*Geiss v. Weinstein Co. Holdings LLC,* 383 F. Supp.3d 156 (S.D.N.Y. 2019) .............................15

*GemShares, LLC* v. *Kinney*, No. 17 Civ-844 (CM), 2017 WL 2559232 (S.D.N.Y. June, 2017)...............2

*H.J. Inc. v. NW Bell Tel. Co.,* 492 U.S. 229 (1989) .................................................................18

*Hayden v. Paul Weiss, Rifkind, Wharton & Garrison*, 955 F. Supp. 248 (S.D.N.Y. 1997) ........................20

*Hemi v. City of New York*, 559 U.S. 1 (2010) ........................................................................19

*Holmes v. Securities*, 503 U.S. 258 (1992) .............................................................................19

*In re SAIC Inc., Derivative Litig.*, 948 F. Supp.2d 366 (S.D.N.Y. 2013)................................ 10, 22

*Ishmail v. ATM Three, LLC*, 77 A.D.3d 790 (2d Dep't 2010).....................................................24

*"John Doe 1" v. Board of Educ. of Greenport Union Free Sch. Dist.*, 955 N.Y.S.2d 600 (2d Dep't 2012) .....23

*Johnson v. Oval Pharm.*, 165 A.D.2d 587, 569 N.Y.S.2d 49 (1st Dep't 1991)............................9

*Jones v. Hiro Cocktail Lounge*, 139 A.D.3d 608 (1st Dep't 2016) ...............................................9

*Loucks v. Cmty. Home Care Servs.*, 618 N.Y.S.2d 826 (1994) ...................................................5

*Makowski v. United Bdb & Joiner of Am.*, 2010 WL 3026510 (S.D.N.Y 2010)...........................17

*Milosevic v. O'Donnell*, 2010 WL 3432237 (N.Y. Sup. Ct. 2010), *aff'd*, 934 N.Y.S.2d 375 (1st Dep't 2011)................................................................................................................................23

*Moskal v. Fleet Bank*, 180 Misc. 2d 819 (N.Y. Sup. Ct. 1999), *aff'd as modified*, 703 N.Y.S.2d 126 (2000) ................................................................................................................................................25

*Nobel v. Weinstein*, 335 F. Supp.3d 504 (S.D.N.Y. 2018) .................................................. 12, 13

*Ortiz v. N.Y. City Hous. Auth.*, 22 F. Supp.2d 15 (E.D.N.Y. 1998), *aff'd*, 198 F.3d 234 (2d Cir. 1999) 24

*Papasan v. Allain.* 478 U.S. 265 (1986)...................................................................................4

*Ratha v. Phattana Seafood Co.,* Ltd., 2017 WL 8293174 (C.D. Cal. 2017) .................................12

*Read v. Cornning Inc.*, 371 F. Supp.3d 87 (W.D.N.Y. 2019) ............................................. 15, 22

*Reich v. Lopez*, 858 F.3d 55 (2d Cir. 2017) ...........................................................................18

*Reves v. Ernst & Young*, 507 U.S 170 (1993) .......................................................................20

*Riviello v. Waldron*, 47 N.Y.2d 297, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (N.Y. 1979)............................8

*Schaeffer v. Vera Wang Bridal House, Ltd.*, 64 F. Supp.2d 286 (S.D.N.Y. 1999)................................ 24, 25

*Sims v. Bergano*, 3 N.Y.2d 531, 169 N.Y.S.2d 449, 147 N.E.2d 1 (N.Y. 1957) ........................9

*Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178 (2d Cir. 2008) ...............................4, 18

*Sulastri v. Halsey*, 2014 WL 4904718 (E.D.N.Y. Aug. 21, 2014)...........................................11

*Trump Tower v. Palazzolo*, 346 F. Supp.3d 432 (S.D.N.Y. 2018)........................................17

*U.S. v Afyare*, 632 Fed. App'x. 272 (6th Cir. 2016)...........................................................12

*U.S. Fire Ins. Co., v. United Limousine Serv.*, Inc., 303 F. Supp.2d 432 (S.D.N.Y. 2004)...................20, 21

*VFP Investments I LLC v. Foot Locker, Inc.*, 26 N.Y.S.3d 727 (N.Y. Sup. Ct. 2015), *aff'd*, 48 N.Y.S.3d 27 (1st Dep't 2017)..............................................................................................7

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp.2d 486 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009) .............................................................................18

*Zamore v. Bar None Holding Co.*, LLC, 73 A.D.3d 601 (1st Dep't 2010) ....................................24

**Statutes**

Trafficking Victims Protection Reauthorization ACT ("TVPRA"):

18 U.S.C. 1581 - 1588, 1590, 1592........................................................................... 10, 11

18 U.S.C. 1589(a), (b) ............................................................................................ passim

18 U.S.C. 1591 ................................................................................................... 10, 12

18 U.S.C. 1595(a) ................................................................................................. passim

Racketeer Influenced and Corrupt Organizations Act ("RICO")

18 U.S.C. § 1961 ...................................................................................................17

18 U.S.C. § 1962 ............................................................................................... passim

**Rules**

Fed. R. Evid. 201(b)(2) ................................................................................................2

Fed. R. Civ. Proc. 8(a)(2) .........................................................................................4, 25

Fed. R. Civ. Proc. 12(b)(6)........................................................................................1, 4

**Defendant Organizations' Memorandum of Law
in Support of Their Motion to Dismiss
the Second Amended Complaint**

Defendants New York Falun Dafa Association Corp.; The Eastern US Buddha's Study (Falun Dafa) Association, Inc.; Falun Dafa Information Center, Inc.; Friends of Falun Gong Inc.; NY Metropolitan Falun Dafa Association Inc.; International Falun Dafa Association, Inc.; Falun Gong Club of Orange County, Inc.; and New York Upstate Falun Dafa Association, Inc. ("the Defendant Organizations"), respectfully submit this memorandum of law in support of their motion to dismiss the Second Amended Complaint herein ("the SAC") for failure to state a claim, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff seeks to hold the Defendant Organizations[1] responsible for the alleged misconduct of their purported employee, Defendant Kim Cheung. However, the SAC does not set forth a single fact tending to show that the Defendant Organizations have any connection to the abuses that Plaintiff attributes to Mr. Cheung, including his supposedly forcing her by threats of sexual and physical assault to participate in Falun Gong activities, or to apply for asylum in the United States.

The Court has permitted Plaintiff to amend her Complaint twice to state causes of action cognizable under Rule 12(b)(6). Plaintiff has streamlined her claims slightly – which she has reduced to a mere 237 numbered paragraphs over 35 pages (the First Amended Complaint ("FAC") occupied 489 paragraphs spread over 76 pages). However, the SAC is no less conclusory, vague,

---

[1] Plaintiff refers to the Defendant Organizations as the "Falun Dafa religion." *See* SAC ¶ 27. However, unlike Falun Dafa, the Defendant Organizations are legal persons formed under the New York Not-for-Profit-Corporation Law. Plaintiff conflates and confuses the two throughout the SAC in ways that belie their obvious differences. *See, id.* ¶¶ 16, 27. A religion, for instance, may not be sued. And grievances against a religion as such do not come within the purview of the judiciary, under the First Amendment.

1

fanciful, and speculative than were earlier iterations. The SAC still does not satisfy the standards for pleading required by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

The SAC includes the same three defendants that had been added by Plaintiff in her FAC: Falun Dafa Information Center, Inc.; Upstate New York Falun Dafa Association, Inc.; and the Falun Gong Club of Orange County, Inc. However, the Falun Gong Club of Orange County was not in existence at any time relevant to Plaintiff's claims. Two of the original Defendants, the New York Falun Dafa Association, Inc., and International Falun Dafa Association, Inc., likewise did not come into being until after most of the alleged misconduct.[2]

The claim under RICO, 18 U.S.C. § 1962 *et seq.*, which Plaintiff added for the first time in her FAC, is similarly inadequate and also merits dismissal, on several independent grounds. *Inter alia*, it fails to allege a single fact which, even if proved, would establish that the Defendant Organizations engaged in any "racketeering act," much less "a pattern of racketeering activity," within that statute, or that they were associated with or directly or indirectly managed the affairs of any kind of "enterprise." The RICO count also fails to allege that any injuries Plaintiff claims to have sustained were the proximate result of the conduct of these Defendants.

---

[2] The SAC contends that Plaintiff was subjected to abuses from May 2016 through January 2018. As demonstrated in the certificate of incorporation attached as Exhibit A to the Declaration of Terri Marsh, Esq., however, the Falun Gong Club of Orange County, Inc. was not formed until August 28, 2018. The certificates of incorporation attached as Exhibits B and C show that the New York Falun Dafa Association Corp. and International Falun Dafa Association, Inc. were incorporated on November 28, 2017, and July 11, 2017, respectively. This Court may take judicial notice of these dates of formation because they can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). *See GemShares, LLC* v. *Kinney*, No. 17 Civ. 844 (CM), 2017 WL 2559232, at *17 (S.D.N.Y. June 2, 2017) ("In considering a motion to dismiss, a court may take judicial notice of matters of public record, including documents filed with public bodies, such as articles of incorporation") (citations omitted).

Plaintiff alleges that individual Defendants Yong Zhao Cai, Qian Y. Cai, Jiang Li, and Kim K. Cheung subjected her to forced labor, peonage, and enticement into slavery. *See, e.g.,* SAC ¶¶ 212-220. But she does not sufficiently allege that the Defendant Organizations were involved (directly or indirectly) in the design or perpetration of any such acts. Plaintiff's claims in support of various common law and statutory causes of action, including those for *respondeat superior* (¶¶ 115-128), 18 U.S.C. 1595(a) (¶¶ 115-146), and 18 U.S.C. § 1962(c) (¶¶ 198-228) would not, even if proved, establish that the Defendant Organizations were involved in, much less liable for, any of the alleged abuses.

Despite several opportunities to fix the fatal deficiencies in her pleading, Plaintiff has failed to do so. The SAC against the Defendant Organizations should now be dismissed with prejudice.

## INTRODUCTION

Plaintiff alleges that Defendants Yong and Qian Cai, Cheung, and Li subjected her to sexual slavery, forced labor, and forced participation in religious events and festivities. (SAC ¶¶ 212-220). The individual Defendants dispute Plaintiff's allegations. Cheung, for example, contends that he tried to help Plaintiff gain asylum based on her professed practice of the Falun Gong religion and did not force her into sexual slavery, labor, or anything else.

None of those acts is alleged to have been directly or vicariously committed, planned, directed by, or even known to the Defendant Organizations, which have no knowledge and take no position as to whether the alleged acts did or did not occur.

Plaintiff's claims against these Defendants turn entirely on the premise that Cheung was an employee or agent of all eight Defendant Organizations. But he was not, and Plaintiff has nothing but unsupported allegations that he was. And in any event, the SAC provides nothing from which it could be inferred that the Defendant Organizations are responsible for Cheung's alleged misconduct.

3

At its core, this case seems to stem from hurt feelings related to the breakdown of an intimate relationship between Plaintiff and Defendant Cai, and Plaintiff's freely pledged loyalty to Falun Gong as a religious/ideological commitment (her right), and subsequent change of heart (also her right).[3] Of course, Plaintiff's disappointments and hurt feelings, however unfortunate do not entitle her to legal relief against organizations that had nothing to do with her.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails to allege "sufficient factual matter" that, if "accepted as true, … state[s] a claim to relief that is plausible on its face." *Iqbal*, 556 US. at 678, citing *Twombly*, 550 U.S. at 570. A claim is facially plausible only if the alleged facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* By contrast, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 US. at 678, citing *Twombly,* 550 U.S. at 557 (additional citations omitted).

Although the Court must accept all well-pleaded factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual [statement]." *Papasan v. Allain.* 478 U.S. 265, 286 (1986) (citations omitted); *see also Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 183 (2d Cir. 2008) ("Although we construe the pleadings liberally, 'bold assertions and conclusions of law will not suffice'") (citation omitted). Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief,'" as required by Federal Rule of Civil Procedure 8(a)(2), *Iqbal*,

---

[3] Chen expressed unswerving devotion to Falun Gong in the affidavit she submitted along with her asylum petition (attached to Defendant Cheung's Answer, ECF No. 94), and utter disdain for the religion in the materials she has filed in this Court as part of the case at bar.

556 U.S. at 679, the complaint does not satisfy the rules of pleading and should be dismissed. The SAC now before this Court is precisely of that kind.

The plausibility standard, as articulated by the Supreme Court in *Twombly* and *Iqbal*, is intended to avoid the "potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence to support [the plaintiff's] claim." *Twombly*, 550 U.S. at 559-60 (internal quotations omitted). These cases provide this Court with all the reasons it needs to dismiss the instant case forthwith.

## ARGUMENT

**I.     Plaintiff's SAC Does Not State a Claim
        Against the Defendant Organizations under a Theory of _Respondeat Superior_.**

Plaintiff continues to allege that the Defendant Organizations are vicariously liable under a theory of *respondeat superior* for Defendant Cheung's alleged misconduct towards her. *See, e.g.,* SAC ¶¶ 115-128. But the SAC offers no evidence of an employment relationship between Cheung and any Defendant, much less any other "sufficient factual matter" to support these allegations under the standards of pleading required by the Supreme Court in *Twombly* and *Iqbal*.

To state a claim for *respondeat superior*, a plaintiff must plead facts showing, among other things, that: (i) there was an employment, agency or similar relationship between the parties; *see Loucks v. Cmty. Home Care Servs.*, 209 A.D.2d 484, 618 N.Y.S.2d 826, 827 (1994), *see also De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 417 (S.D.N.Y. 2015), and (ii) the alleged wrongdoing was undertaken within the scope of the employee's duties and was thus in furtherance of the employer's interests. *See De Sole v. Knoedler Gallery, LLC*, 137 F. Supp.3d 387, 417 (S.D.N.Y. 2015); *see also Doe v. Alsaud*, 12 F. Supp.3d 674 (S.D.N.Y. 2014). However, Plaintiff offers no evidence that Cheung was employed by any Defendant Organization and certainly none that committing any wrongful act was within the scope of duties he had to them. The reason is that no such evidence exists.

A.  The SAC Does Not Establish an Employment Relationship Between Any Defendant Organization and Cheung.

Plaintiff never shows that there was an employment relationship between Cheung and any Defendant Organizations. Instead, Plaintiff lumps all the separate Organizations together and claims that somehow *all of them* were Cheung's employer. SAC ¶ 16. As counterintuitive as that may be, the allegations lodged against them are identical, *see* SAC ¶¶ 122, 140, 160. Plaintiff does not explain how eight entities with different identities, headquarters, and staffs could have employed the very same person at the very same times. SAC ¶ 16.[4]

B.  The SAC Presents No Facts to Show That the Alleged Misconduct Was within the Scope of Any Duty the Employee Had to the Defendant Organizations.

1.  Scope of Duty Generally

Plaintiff accuses Defendant Cheung of serious and possibly even criminal acts, but does not contend that they were motivated by, or were intended to fulfill, any duty he had to the Defendant Organizations. Instead of presenting facts to support her charges of forced labor and peonage, Plaintiff offers allegations that merely parrot the wording of the scope-of-duty requirement to be found in caselaw, and that set out no facts which, if true, raise any right to relief above the purely speculative level. Thus, for example, the SAC simply makes the naked assertion that the supposed misconduct "was within the scope of [Cheung's] duties," ¶ 123, without any factual support that might permit such an inference. *See, e.g.*, ¶¶ 118, 136, 153 (Cheung's role, Plaintiff claims, "included recruiting and organizing individuals to participate in events and activities that were political and/or religious in nature and that supported the mission" of each and every one of the Defendant Organizations).

---

[4] One of the Defendant Organizations did not exist at any time relevant to Plaintiff's claims and two others, came into being after most of the misconduct had allegedly occurred. *Supra* at n.2.

The Supreme Court has made clear that allegations that do no more than recite the elements of a successful claim do not satisfy Rule 8(a). "[A] plaintiff's obligation to provide the 'grounds' of [his or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (2007) (internal citations omitted); *see also VFP Investments I LLC v. Foot Locker, Inc.*, 26 N.Y.S.3d 727 (N.Y. Sup. Ct. 2015), *aff'd*, 48 N.Y.S.3d 27 (1st Dep't 2017) (dismissing complaint because it lacked factual allegations to support the "conclusory statements … that [the employees' conduct at issue was] within the scope of their employment"). Here, no facts are pleaded that could sustain the conclusion that anything Cheung did to Plaintiff was within the scope of employment with the Defendant Organizations.

Moreover, the factual allegations must be more than pure speculation. *Twombly*, 550 U.S. at 545. *See,* for example, ¶ 119*,* which asks the Court to infer that Cheung was acting within the scope of his duties (to whom she does not say), from the duration of his "employment" as a recruiter, or ¶ 122, claiming without support that Plaintiff's "forced" attendance at Falun Gong events somehow benefitted (or was intended to benefit) the religion. Neither fact, even if true, would suffice. The duties of a recruiter obviously do not include the alleged misconduct. These vague speculations cannot keep this claim alive in light of well-established pleading standards to the contrary.

Finally, Cheung is accused of threatening to subject Plaintiff to sexual and physical abuse to force her to work against her will. *See* SAC ¶ 119. *See also id.* ¶¶ 104, 132, 220. In this context, New York courts have consistently held what is obvious: sexual misconduct and similar tortious behavior stemming from personal motives "do not further an employer's business, even when committed within the employment context." *Alsaud*, 12 F. Supp.3d 674, 677-78 (S.D.N.Y. 2014). The Defendant Organizations are not aware of a single decision in New York in which the doctrine of *respondeat superior* was held to apply to sexual violence or threats. Indeed, "New York courts have

repeatedly found no vicarious liability for claims involving such misconduct." *Adorno v. Corr Servs. Corp.* 312 F. Supp.2d 505, 516-517 (S.D.N.Y. 2004) (citations omitted). Plaintiff offers no basis for this Court to deviate from those consistent precedents. And indeed, although she repeatedly insists without evidence that Cheung was acting "within the scope of [his] employment" presumably with all eight of the Defendant Organizations, *e, e.g.*, SAC ¶ 123, she also admits that his alleged assaults "were for his own personal pleasure and gratification." *Id.* ¶ 105.

2. The *Riviello* "Scope-of Duty" Test.

This Court set out in *Adorno* the bases to assess whether a *respondeat superior* claim sufficiently alleges the scope-of-duty prerequisite. The factors to be taken into account are: (1) the time, place, and occasion for the act giving rise to the complaint, (2) the history of the relationship between employer and employee, (3) whether the act is of a type commonly performed by such an employee, (4) the extent of departure from normal methods of performance, and (5) whether the specific act was one the employer could reasonably have anticipated. After a review of these factors, the *Adorno* Court concluded that the *respondeat superior* contentions failed, although that case presented far more evidence of employer involvement than does the SAC here. *Adorno*, 312 F. Supp.2d at 516-18 (citing *Riviello v. Waldron*, 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (N.Y. 1979)).

The SAC fails even to allege that the factors articulated in *Riviello* and *Adorno* are satisfied. Plaintiff Chen does not claim that she was subjected to threats or violence through any act of the Defendant Organizations, on their property, or to promote their objectives. She presents or alludes to no evidence of the history of the relationship between Cheung and the Defendant Organizations.[5] And obviously, committing acts of physical and sexual violence, much less carrying out such abuse

---

[5] No facts are alleged to suggest that the Defendant Organizations encouraged or even tolerated such outrageous conduct. As in *Adorno*, Plaintiff cannot carry the burden required of her. *Adorno*, 312 F. Supp.2d at 517.

in order to force someone to work, falls outside of the job description of a recruiter, nor does Plaintiff contend otherwise.

As the *Adorno* court noted, the fifth factor – whether the "acts involved … could reasonably have been anticipated by [the] employer," 312 F. Supp.2d at 517 – is the most significant in determining whether an employer is liable for the misbehavior of its employee. But here too, there is simply nothing in the SAC except conclusory allegations. And while the "employer need not have foreseen the precise act or the exact manner of the injury" that occurred, "the general type of conduct [must] have been reasonable expected." *Id.*, 312 F. Supp.2d at 516 (citations omitted). Thus, employers have been found vicariously liable for physical assaults where it was reasonably contemplated that an employee might be required to use force. *See Sims v. Bergano*, 3 N.Y.2d 531, 534-36, 169 N.Y.S.2d 449, 147 N.E.2d 1 (N.Y. 1957) (assault of unruly patron by bartender hired to maintain order on the premises was foreseeable); *Johnson v. Oval Pharm.*, 165 A.D.2d 587, 592-94, 569 N.Y.S.2d 49 (1st Dep't 1991) (bouncers' use of excessive force to remove patrons from the premises was foreseeable). *See also Jones v. Hiro Cocktail Lounge*, 139 A.D.3d 608 (1st Dep't 2016).

There is not a single well-pleaded fact in the SAC to suggest that, even if he was an employee of some person or entity, Cheung's job duties included anything remotely related to the alleged threats of sexual and physical violence. Surely the claim that Cheung was employed "for the purposes of recruiting and organizing "volunteers" and other individuals to participate in Falun Dafa activities and events," SAC ¶¶ 118, 124, does not come close. There is no allegation that the Defendant Organizations could reasonably have anticipated that an "organizer" or "recruiter" would threaten or commit violence to coerce Plaintiff (or anyone else) to participate in parades and other outdoor events against her will. As in *Adorno*, where this Court found that the employer could not have reasonably anticipated the misconduct because the employee's duty "in no way mandated any kind of physical contact, let alone sexually oriented physical contact," *Adorno,* at 517, here, the duties

of a "recruiter," as alleged in the SAC, do not involve any physical contact, or "threats of physical and sexual violence," much less forced labor or peonage.

Plaintiff alleges that Cheung was employed by all of the Defendant Organizations for 18 months, But even if this were true (which it is not), duration of employment does not make allegedly abusive conduct foreseeable. SAC ¶¶ 123, 139. Plaintiff's allegations as to her supposed "enslavement" for that same period of time, *id.* ¶¶ 134, 140, are similarly inadequate. Courts in this Circuit have declined to draw inferences of knowledge of illegal schemes based on far longer involvement. *See, e.g., In re SAIC Inc., Derivative Litig.*, 948 F. Supp.2d 366, 387 (S.D.N.Y. 2013) (absent other evidence of actual or constructive knowledge, duration alone will rarely suffice). Plaintiff again merely states a bare claim: she offers no evidence showing how the claimed abuse was foreseeable based only on the alleged duration of Cheung's alleged employment with the religion and/or what she calls its "legal manifestations." SAC ¶¶ 205, 209.

All claims suggesting the liability of the Defendant Organizations under the doctrine of *respondeat superior* fail the *Twombly/Iqbal* test, and should be dismissed with prejudice.

## II.   Plaintiff Has Not Stated a Claim Pursuant to §§ 1581 and/or 1589(b) of the Trafficking Victims Protection Reauthorization Act.

The Trafficking Victims Protection Reauthorization Act ("TVPRA") was enacted to address the problem of human trafficking into and from the United States. Although it is primarily a criminal statute, it also makes available a civil remedy:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter).

18 U.S.C. § 1595(a). Civil TVPRA claims may be filed for alleged violations of several provisions of the statute, including §§ 1581 (peonage), 1583 (enticing into slavery), 1589 (forced labor), and 1591

(sex trafficking).[6] Here Plaintiff alleges that the Defendant Organizations violated prohibitions under §§ 1581 and 1589(b).

To state a claim under these sections of the United States Code, however, Plaintiff must plead that the Defendant Organizations themselves perpetrated the alleged crimes, and/or that they derived a financial or other benefit from their knowing "participation" in a "venture" involving peonage or forced labor. 18 U.S.C. § 1595(a). She has not done so. The allegations of the SAC are insufficient to insulate these causes of action against a motion to dismiss for failure to state a claim.

A.   Plaintiff Has Not Pleaded the Elements of a Peonage Claim under § 1581.

As an initial matter, the SAC does not even allege any facts relating to peonage, which under U.S. law is defined as a condition "[t]he essence of [which] is compulsory service in *payment of a debt*." *Bailey v. State of Alabama*, 219 U.S. 219, 242 (1911) (emphasis added); *see also Sulastri v. Halsey*, 2014 WL 4904718 at *11 (E.D.N.Y. Aug. 21, 2014) (peonage "is tied to the discharge of an indebtedness"). Plaintiff does claim that certain individual Defendants forced her to undertake "cleaning of interior of the home, yard work, babysitting, food shopping, cooking, and other activities" without pay. SAC at ¶ 56, *see also* ¶¶ 76, 88, 104, 109. But nowhere does she allege any connection between the work she says she was forced to do and any indebtedness to anyone. And she makes no relevant claims at all relating to the Defendant Organizations. So, this count against the Defendant Organizations fails at the threshold.

B.   Plaintiff Has Not Pleaded the Elements of a Forced Labor Claim under § 1589(b).

---

[6] Other criminal acts for which the TVPRA provides the possibility of civil remedies include §§ 1584 (selling a person into slavery), 1582 and 1585-1588 transporting slaves using vessels), 1590 (trafficking related to slavery), and 1592 (unlawful conduct related to documents in furtherance of slavery).

Nor does the SAC allege that the Defendant Organizations subjected Plaintiff to forced labor pursuant to § 1589(b). To plead such a claim, Plaintiff must contend that the Defendant Organizations "benefit[ed]" from their "participation" in a forced labor scheme against Plaintiff, and that they did so "knowingly." To the extent that the SAC addresses these factors at all, Plaintiff fails to plead the "participation," "benefit," and "knowledge" elements of 18 U.S.C. § 1589(b).

1. Plaintiff does not adequately allege that the Defendant Organizations "participated in" a forced labor scheme.

"Participation" is not defined in § 1589 of the TVPRA. In a case presenting a forced labor claim, *Ratha v. Phattana Seafood Co.,* Ltd., 2017 WL 8293174 (C.D. Cal. 2017), a District Court in California relied on caselaw defining the term "participation" as used in RICO, concluding that the word similarly requires actual engagement and direction ("a party is deemed to have participated only if they took part in the operation and management of the enterprise," *id.* at *4). Here, as *in Ratha*, nothing alleged in the SAC comes close to demonstrating that the Defendant Organizations took any action to operate or manage a venture involving forced labor.

This Court has offered a similar understanding of "participation," requiring that a defendant actually promote the alleged TVPRA scheme. In *Nobel v. Weinstein*, 335 F. Supp.3d 504, 524 (S.D.N.Y. 2018), a sex-trafficking case under § 1591(a)(2),[7] this Court defined "participation" as the "*furthering* [of] the alleged [TVPRA] venture" (emphasis added). Because guilt, or in this case, liability, cannot be established by association alone, "mere *membership* in the venture is insufficient," *id.,* (emphasis added) citing *U.S. v Afyare*, 632 Fed. App. 272, 285 (6th Cir. 2016) (holding that to be found culpable, a "defendant must actually participate and commit some overt act that furthers" the criminal "aspect of the venture," and that the TVPRA does not criminalize any lesser conduct).

---

[7] The elements required in a § 1591(2) claim are substantially identical to those require in the forced labor section of the statute.

Here, the SAC offers no facts suggesting that the Defendant Organizations furthered a TVPRA scheme through an overt act or in any other way. Plaintiff does not even allude to any role of the Defendant Organizations in the "venture," and never explains what conduct of theirs amounted to "participation" that "furthered" it. Plaintiff's bare statement that these Defendants "participated" in the misconduct (SAC ¶ 200) is conclusory and obviously inadequate. To plead a violation of this section of the TVPRA Plaintiff must supply "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 556). What is required here, yet what is missing, are factual allegations of participation that could be the predicate for a violation.

Nor is what Plaintiff presents as part of her RICO claim, SAC ¶ 205, to the effect that the Defendant Organizations "participated" in Falun Dafa religious events by providing such services as office space, fundraising, event coordination, and other perfectly legitimate professional assistance, sufficient, or even relevant. As in *Nobel,* where this Court determined that the tortfeasor's regular business responsibilities did not demonstrate "participation" in the TVPRA violation, 335 F. Supp.3d at 524, the provision of these routine professional services do not demonstrate that the Defendant Organizations participated in the alleged venture. To plead a violation of § 1589(b), Plaintiff must provide "factual content that allows the court to draw the reasonable inference that the defendant is *liable for the misconduct alleged*," (emphasis added) *Iqbal*, 556 U.S. at 678, which is to say, in this instance, forced labor. But there are no factual allegations suggesting that these or any other routine business services provided in support of religious events furthered Cheung's purported violation of the TVPRA prohibition of forced labor.

     2.   Nor does Plaintiff sufficiently allege that the Defendant Organizations <u>"benefitted from" a forced labor scheme.</u>

Plaintiff also fails to set out adequately the "benefit" element of her § 1589(b) forced labor claim. As was true of her initial Complaint and the first attempt to reformulate it, her allegations, *e.g.,* SAC ¶¶ 119, 121, 123, 124, are insufficient under *Twombly*, 550 U.S. at 555. Plaintiff simply states that the Defendant Organizations benefitted from the alleged forced labor scheme because Plaintiff attended certain public events. SAC ¶ 122. Plaintiff's speculation that the attendance of one additional person at Falun Gong protests, parades, and festivals somehow "bolstered" the legitimacy of (and therefore presumably benefitted) the Defendant Organizations or the Falun Dafa religion, SAC ¶ 122, is far from plausible, and far from sufficient.

The SAC does not provide a single fact in support of such a novel theory. It is not even explain how the presence of one additional person at any of these events would or could be noticed by anyone, much less that it would have been of "benefit" to the Falun Dafa religion (assuming the religion even seeks such "bolstering").[8] Instead of providing well-pleaded allegations here, Plaintiff once again merely reiterates language devoid of elaboration or explanation. She has failed to provide an adequate pleading of this essential element of her forced labor TVPRA claim.

In addition, to ground such a claim, Plaintiff must contend that the "benefit" the Defendant Organizations derived came "from" – that is, was a result of – the participation. The statute permits a plaintiff to "bring a civil action against …whoever knowingly benefits … *from* participation in a venture which that person knew or should have known has engaged in" prohibited conduct. 18

---

[8]  In light of the huge size of events involving the Falun Dafa religion in New York City, Plaintiff's argument is all the more farfetched and implausible. Thousands of people attended these events. *See*, *e.g.*, Larry Ong, *Falun Dafa Marks 25 Years With Grand Parade in Manhattan,* THE EPOCH TIMES (May 12, 2017), https://www.theepochtimes.com/falun-dafa-marks-25-years-with-grand-parade-in-manhattan_2249599.html, attached as Exhibit D. *See also*, Exhibit E, documenting the September 2016 protest Plaintiff was purportedly forced to attend. Plaintiff refers to this occasion many times in her SAC (¶¶ 108, 120, 133, 151, 168, 220). In ruling on a motion to dismiss, this Court may consider documents that plaintiffs knew about and relied on in bringing suit. *See Cortec Inds., Inc.* v. *Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991).

U.S.C. § 1595(a) (emphasis added); *see also Geiss v. Weinstein Co. Holdings LLC,* 383 F. Supp.3d 156, 169 (S.D.N.Y. 2019) ("there must be a causal relationship between affirmative conduct furthering the [prohibited] venture and receipt of a benefit"). In *Geiss*, this Court dismissed the complaint where a plaintiff failed to allege that the benefit received by the defendant company (there, financial gain from Harvey Weinstein's movie production and influence) came about "because of [the company's] facilitation of Weinstein's sexual misconduct." *Id.* at 169-170. Here, Plaintiff fails to allege that the Defendant Organizations "participated" in the forced labor in the first place, and therefore, any benefit they might have received from Plaintiff's subjection to forced labor could not have been "because of" their participation in the scheme.

3. Plaintiff presents no facts to support the claim that the Defendant Organizations had "knowledge" of any supposed forced labor scheme.

Plaintiff once again offers nothing but conclusory allegations to suggest that the Defendant Organizations even knew of any scheme to subject her to forced labor. Her unadorned assertions that the Defendant Organizations "knew and/or should have known" of the violations, SAC ¶¶ 134, 135 are obviously insufficient. When knowledge is an element of a claim, the bare statement that defendant knew or should have known of a certain fact, without supporting evidence, is not enough. *Read v. Corning Inc.,* 371 F. Supp. 3d 87, 92 (W.D.N.Y. 2019).

Nor do the few allegations of the SAC that are not purely conclusory create a plausible inference that the Defendant Organizations knew of any forced labor violations. The best Plaintiff can do is to allege, without evidence, (a) that the Defendant Organizations employed Cheung "at minimum from May of 2016 until January of 2018," SAC ¶ 130, and (b) that Cheung's supposed misconduct and "enslavement" of Plaintiff lasted for the same period of time, SAC ¶¶ 139-140.[9]

---

[9] *See also, supra*, 10 (courts in this Circuit have declined to draw inferences of knowledge based on far longer involvement).

Therefore, these charges do not add up to a claim of knowledge, actual or constructive, on the part of the Defendant Organizations. They surely do not "nudge the claim from the purely conceivable to the plausible," as required by *Twombly*, 550 U.S. at 570.

Plaintiff's failure to allege any of the critical statutory elements with the specificity demanded by the Supreme Court is fatal to her forced labor claim.

### III.     The RICO Claims Do Not Satisfy the Applicable Pleading Requirements.

Plaintiff also alleges a violation of RICO, § 1962(c). To make out such a claim, however, she must show she "was injured by Defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cruz v. FXDirect Dealer, LLC*, 720 F. 3d 115, 120 (2d Cir. 2013). The criminal conduct required to sustain a RICO claim is sometimes referred to as "'predicate acts." The SAC does not adequately allege any of these elements against the Defendant Organizations.

#### A.   The Predicate Racketeering Acts Have Not Been Adequately Pleaded.

Plaintiff purports to identify conduct of the Defendant Organizations that constituted the requisite predicate acts. *See, e.g.*, SAC ¶¶ 140, 200, 211, 221. But her RICO claim fails because, as has already been demonstrated, none of the alleged predicate acts are sufficient to establish liability under the TVPRA, and therefore likewise do not meet the requirements of RICO.

As noted, *supra* at section II.A, the SAC does not adequately allege that the Defendant Organizations engaged in peonage, "[t]he essence of which is compulsory service in payment of a debt." *Bailey v. State of Alabama*, 219 U.S. at 242. And as we have also shown, *supra* at section II.B, an actionable forced labor claim would require Plaintiff to establish that the Defendant Organizations were perpetrators of a scheme involving coercion or threats, 18 U.S.C. § 1589(a) or that they benefited from their participation in the scheme and did so knowingly. 18 U.S.C. § 1589(b). None of these claims have been adequately alleged.

Nor can the RICO count of the SAC survive on the theory that the Defendant Organizations violated § 1962(c) vicariously. To state a RICO claim under a vicarious liability theory, a complaint must allege that a "corporate ... defendant is a central figure in the RICO scheme." *Trump Tower v. Palazzolo*, 346 F. Supp.3d 432, 459 (S.D.N.Y. 2018). The relevant factors are: (i) whether a corporate officer had knowledge of or was recklessly indifferent to the unlawful acts, (ii) the number of high-level employees involved in the racketeering activity, their degree of participation, and (iii) whether the corporation substantially benefited from the illegal conduct. *Id.*, 346 F. Supp.3d at 460 (quoting *Makowski v. United Bdb & Joiner of Am.*, 2010 WL 3026510, at *6 (S.D.N.Y 2010)). None of these factors are present; indeed, none are alleged.

Here, not one fact set out in the SAC suggests that a corporate officer of the Defendant Organizations was involved in, had knowledge of, or was recklessly indifferent to any unlawful activity, much less that he or she committed a predicate act (here, of forced labor or peonage). Indeed, the pleading does not mention the name of a single corporate officer. Plaintiff alleges no more than that the individual defendants "participated in and operated [the enterprise], *through the Defendant Organizations,"* that is, as passive conduits, "to conduct all of their illicit activities." SAC ¶ 206 (emphasis added). But where an organization serves as a "mere conduit" in the illegal behavior of others, it is not a central figure in the unlawful scheme, and there is no RICO liability. *See Amendolare v. Shenkers Int'l Forwarders, Inc.,* 747 F. Supp. 162, 168 (E.D.N.Y. 1990).

B. No "Pattern" Has Been Adequately Pleaded.

"The heart of any RICO complaint is the allegation of a pattern of racketeering activity." *Agency Holding Corp. v. Malley-Duff & Assoc, Inc.*, 483 U.S. 143, 154 (1987). Section 1961(5) provides that such a pattern requires at least two culpable acts. Insofar as all of Plaintiff's predicate act allegations against the Defendant Organizations are insufficient, the SAC does not, nor can it, demonstrate a pattern of racketeering activity with respect to these Defendants.

To demonstrate the requisite "pattern," a plaintiff must also prove that the "predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc. v. NW Bell Tel. Co.,* 492 U.S. 229, 240 (1989) (emphasis added). "Continuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its very nature projects into the future with a threat of repetition." *Id.* (citations omitted).

To show closed-ended continuity, Plaintiff must prove "a series of related predicates extending over a substantial period of time." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999). Significantly, predicate acts extending for less than a two-year term are not considered "substantial" in the Second Circuit. *Reich v. Lopez,* 858 F.3d 55, 60 (2d Cir. 2017); *see also Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 184-85 (2d Cir. 2008) ("[a]lthough we have not viewed two years as a bright-line requirement, it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity").

Absent evidence of substantial duration, liability depends on whether a plaintiff can show the threat of future illegal activity. *H.J.* 492 U.S. at 241-42. Here, as to the Defendant Organizations, the SAC does not allege the continuity necessary to satisfy the RICO statute. Plaintiff does not plead any predicate act by any of the Defendant Organizations that extended over more than two years. SAC, *e.g.,* ¶¶ 110, 119, 132, 139, 140, 150. Nor does she allege any threat that the Defendant Organizations might in the future subject her to forced labor (or peonage). Courts in this jurisdiction decline to find open-ended continuity where, as here, the defendants "are not even alleged to have … participated" in any illegal scheme. *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp.2d 486, 517-18 (S.D.N.Y. 2007), *aff'd,* 328 F. App'x 695 (2d Cir. 2009). Indeed, "even if [Plaintiff] has sufficiently pled open-ended continuity as to the [individual defendants, she] has not come close to pleading open-ended continuity" as to the Defendant Organizations. *Id.,* citing *First Capital Asset*

*Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 180 (2d Cir. 2004) ("In analyzing the issue of continuity, ... we evaluate the RICO allegations with respect to each defendant individually").

### C.  Plaintiff Has Not Adequately Alleged That She Was Injured as a Result of Any RICO Violations by the Defendant Organizations.

Finally, Plaintiff does not adequately allege that as a result of any actions of the Defendant Organizations, she suffered injury of a kind that § 1962(c) was designed to deter, much less that any such injury was the proximate result of those actions. To establish that an injury resulted from a RICO violation, a plaintiff must show that the "RICO predicate offense was not only a 'but for' cause of his injury; but was the proximate cause as well," *Hemi v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Securities*, 503 U.S. 258, 268 (1992)). This means that the injury complained of "necessarily is the harm caused by [the] predicate acts." *Id.* at 13. Here, however, as Plaintiff has not sufficiently pleaded a single predicate act, she cannot claim that her injuries were proximately caused by RICO violations. Moreover, she herself attributes her loss of property and funds not to the Defendant Organizations, but to the government of China. *See, e.g.,* SAC ¶¶ 143, 234, 236.

### D.  Plaintiff Has Not Adequately Alleged That the Defendant Organizations Were Involved with or Managed the Illicit Affairs of an "Enterprise."

Plaintiff does not plead any facts that would allow the Court to draw the reasonable inference that there was "an enterprise" in whose illicit affairs the Defendant Organizations participated (or which it managed), directly or indirectly, "through a pattern of racketeering activity." *First Capital Asset Mgmt.*, 385 F.3d at 175-76, quoting 18 U.S.C. § 1962(c).

First, the  members of an enterprise "must share a common purpose to engage in a particular *fraudulent* common course of conduct and work together to achieve such purposes." *First Capital Asset Mgmt.,* 385 F.3d at 174 (emphasis added). Thus here, if the supposed "enterprise" is to include any or all of the Defendant Organizations, Plaintiff must allege that they shared the common purpose of obtaining forced labor from her. She has now failed to do so in three iterations of her

Complaint. While the SAC alleges that the Defendant Organizations "participated" in "the enterprise," through the provision of perfectly routine and legitimate services to the religion and its "legal manifestations" as stand-ins for an enterprise, ¶ 205, it does not contain a single non-conclusory allegation that the ordinary commercial services the Defendant Organizations provided for the purpose of coordinating Falun Gong events, *id.*, were linked in any way to the illicit affairs of any alleged "enterprise." Nor does Plaintiff provide any other allegations that establish these Defendants' ties with the forced labor or other illegal schemes. *See supra* at § II. B.

Even if the SAC did sufficiently allege the Defendant Organizations' enterprise involvement in the illicit affairs of an "enterprise" (which it does not), it still contains no claim that they "conducted" or were involved in operating or managing it. The requirement of showing a defendant's role in "the operation or management of the enterprise" in RICO cases, *DeFalco v. Bernas,* 244 F. 3d 286, 309 (2d Cir. 2001) (citing *Reves v. Ernst & Young,* 507 U.S. 170, 185), is strict. Even taking directions and performing tasks "necessary and helpful to," or providing "goods and services that ultimately benefit the enterprise," is not sufficient. *U.S. Fire Ins. Co., v. United Limousine Serv.,* Inc., 303 F. Supp.2d 432, 451-52 (S.D.N.Y. 2004). RICO liability requires more than that.

Plaintiff offers nothing to suggest that the Defendant Organizations took any part in managing the affairs of an enterprise. Even if the Defendant Organizations provided legitimate professional services or office space  to Falun Gong events, that would not be enough to establish RICO liability. *Hayden v. Paul Weiss, Rifkind, Wharton & Garrison*, 955 F. Supp. 248, 254 (S.D.N.Y. 1997). ("[I]t is well established that the provision of professional services by outsiders, such as accountants, to a racketeering enterprise, is insufficient to satisfy the participation requirement of RICO, since participation requires some part in directing the affairs of the enterprise itself."). In *U.S. Fire Ins.*, 303 F. Supp.2d at 453, the defendant "[did] more than provid[e] services as part of its

routine and legitimate business operations," but instead "ma[de] critical misrepresentations, creat[ed] false documents and … serv[ed] as the point of communication." By contrast, Plaintiff does not make any factual allegation that the Defendant Organizations offered anything more than perfectly routine and legitimate services to organize and coordinate Falun Gong activities. SAC ¶ 205. *See also Crab House of Douglaston, Inc. v. Newsday, Inc.*, 418 F. Supp.2d 193, 208 (E.D.N.Y. 2006) (holding that plaintiff did not adequately plead that a defendant was conducting the enterprise's affairs when it failed to distinguish between the defendant's legitimate capacity as a supervisor at the newspaper and his illegitimate role as a director or manager of the enterprise).

Here Plaintiff alleges that the RICO "enterprise" consists of **all** Defendants. SAC ¶ 200. But once again, she does not offer a single fact to support such a fanciful claim. The complete absence of any specific allegation of the Defendant Organizations' coordinated efforts to further a single unlawful scheme is fatal to her thin and unsubstantiated RICO count.

### IV.    <u>Plaintiff Has Not Stated Claims for Negligent Hiring, Supervision, or Retention.</u>

In New York,

> a claim for negligent hiring, supervision, and retention requires a plaintiff to show: (1) that the tortfeasor and defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels.

*Biggs v. City of New York*, 2010 WL 4628360, at *9 (S.D.N.Y. 2010). Even if the SAC adequately pleaded that Cheung was an employee of the Defendant Organizations, which it does not, it fails to satisfy either of the last two elements. First, Plaintiff does not make any plausible allegation that the Defendant Organizations knew or should have known that Cheung had a propensity for violence or assault. Second, she does not and cannot allege that any abuse occurred on the premises of the Defendant Organizations or using their "chattels."

21

A.  The SAC Does Not Allege That the Defendant Organizations Had Notice
of Cheung's Supposed Propensity for Sexual Violence or Other Inappropriate Conduct.

Claims for negligent hiring, supervision, and retention require a plaintiff to allege specific

prior misconduct by the employee to provide a basis from which to infer the employer's knowledge.

*Doe v. Alsaud,* 12 F. Supp.3d at 680, 682. The SAC does not contain a single allegation of prior bad

acts by Cheung. Instead, it asserts, without any elaboration whatsoever, that the Defendant

Organizations "knew that Mr. Cheung used threats of both sexual and non-sexual violence… to

recruit … Ms. Chen and other similarly situated individuals." SAC ¶ 154. Such threadbare

conclusory allegations are insufficient. *See Read v. Corning Inc.*, 371 F. Supp.3d 87, 92 (W.D.N.Y.

2019) ( "[w]here a defendant's knowledge … is an element of a tort claim, a bare assertion that a

defendant 'knew or should have known' of that fact or circumstance is insufficient to state a claim").

The SAC urges the Court to infer the Defendant Organizations' purported knowledge from

Plaintiff's unsupported theory, that the Defendants Organizations all employed Cheung and that

they did so for 18 months. *See, e.g.,* SAC ¶ 156. Significant case law shows that this is not sufficient.

*See, e.g., In re SAIC Inc., Derivative Litig.,* 948 F. Supp.2d 366 at 387. As in *Doe v. Alsaud,* 12 F. Supp.3d

at 680, the SAC offers no explanation as to how these or any other facts might support the claimed

"specific prior conduct" permitting the inference that the Defendant Organizations knew or should

have known of Cheung's propensity to commit the alleged abuses before they occurred. Rule 8(a),

according to *Iqbal,* requires a plaintiff to allege more than "the mere possibility of misconduct." 556

U.S. at 679. Accordingly, as in *Iqbal,* Plaintiff here has not "nudged [her] claims …  across the line

from conceivable to plausible." *Id.* at 680.

The complete absence of specific factual allegations concerning any prior wrongdoing by

Cheung, of which the Defendant Organizations might have had actual or constructive knowledge, is

fatal to Plaintiff's negligent hiring and retention claims, and mandates that they be dismissed.

B. The SAC Does Not Allege that
   Plaintiff's Injuries Occurred on the Premises of the Defendant Organizations.

Putting aside Plaintiff's failure to plead any kind of master-servant relationship between Mr.

Cheung and the Defendant Organizations, Plaintiff's negligent hiring, supervision, and retention

claims also fail for the independent reason that the alleged misconduct did not occur anywhere near

the Defendant Organizations' premises and did not involve their goods. Under New York law, an

employer cannot be held liable under theories of negligent supervision or retention for an

employee's bad acts unless those criteria are satisfied. *Biggs,* 2010 WL 4623860 at *9; *see also Ehrens v.*

*Lutheran Church*, 385 F.3d 232, 236 (2d Cir. 2004) (affirming dismissal of negligent supervision claim

against church when minister's bad behavior did not occur on church premises); "*John Doe 1" v.*

*Board of Educ. of Greenport Union Free Sch. Dist.*, 955 N.Y.S.2d 600 (2d Dep't 2012) (dismissing

negligent hiring and supervision claims where the school employee's misconduct occurred off

school grounds); *Milosevic v. O'Donnell*, 2010 WL 3432237 (N.Y. Sup.Ct. 2010), *aff'd*, 934 N.Y.S.2d

375 (1st Dep't 2011) (dismissing negligent supervision claim where employer "neither owned nor

operated the premises in which plaintiff allegedly was injured").

Here, the SAC does not plead that the Defendant Organizations owned or controlled any

premises where the purported injuries occurred, such as, the New York City streets where Plaintiff

claims she was forced to attend "*outdoor* events and activities," SAC ¶¶ 169, 171, and where she was

"represented *to the public* as a supporter" of the Defendant Organizations. *See* SAC ¶¶ 122, 142

(emphasis added). Indeed, there is no dispute that the injuries alleged in the SAC occurred, if at all,

in public places. Plaintiff's naked assertion, contradicting her own claims, that that they took place

"within a zone of …[the Defendant Organizations'] control," SAC ¶ 169, is another illustration of

her simply reciting the elements of a cause of action, which is not to be taken as a substitute for

alleging sufficient facts.

**V.**     <u>**Plaintiff Has Not Adequately Pleaded a Claim for Negligent Security.**</u>

To state a claim for negligent security, a plaintiff must establish that (1) the owner (or occupier) of the premises where the injury occurred owed plaintiff a duty of care, (2) the duty was breached, (3) injury resulted from the breach, and (4) the injury was foreseeable. *See Schaeffer v. Vera Wang Bridal House, Ltd.*, 64 F. Supp.2d 286, 292 (S.D.N.Y. 1999) (citations omitted). Plaintiff Chen does not allege facts sufficient to support these elements.

As in the context of negligent supervision, a negligent security claim requires a plaintiff to show that the injury she sustained occurred on or near a defendant's premises, and that it was foreseeable, *i.e.*, "there [was] a likelihood of conduct on the part of third persons … which [was] likely to endanger the safety of the visitor." *Schaeffer,* 64 F. Supp.2d at 292-293 (quoting *Iannelli v. Powers,* 114 A.D.2d 157, 498 N.Y.S.2d 377, 380 (N.Y. App. Div. 1986), *leave to appeal den.*, 506 N.Y.S.2d 1027 (N.Y. 1986)). Thus, in *Ortiz v. N.Y. City Hous. Auth.*, 22 F. Supp.2d 15 (E.D.N.Y. 1998), *aff'd*, 198 F.3d 234 (2d Cir. 1999), the city housing agency was found liable for failing to secure a low-income apartment building it managed, because the security breach was foreseeable. But in *Zamore v. Bar None Holding Co., LLC*, 73 A.D.3d 601 (1st Dep't 2010), by contrast, the court held that while a nightclub operator owed a duty of care to customers, injuries caused by a glass thrown by a patron were not evidence of a breach of that duty, because they could not be foreseen. *See also Ishmail v. ATM Three, LLC*, 77 A.D.3d 790, 791-92 (2d Dep't 2010) (even if landowner had duty to protect tenants from harm, injuries from a fire set by a third party were not foreseeable).

As regards the first factor, Plaintiff does not allege that the injury occurred on or near the premises of the Defendant Organizations. Instead she contends that Cheung abused her on the public streets of New York. SAC ¶ 169. Here, the only conceivably relevant allegation is no more than the unsupported assertion that the events took place "within a zone of …[the Defendant Organizations'] control," *id.* ¶ 169. That claim is untenable. And as to foreseeability, the SAC also

fails. It does not allege that similar abuse had occurred in that area earlier, *see Schaeffer*, 64 F. Supp.2d at 294 (citations omitted), or that because of the unique nature of the circumstances the Defendant Organizations were obligated to take additional steps to minimize any risk of danger to her. *See Moskal v. Fleet Bank*, 180 Misc.2d 819, 825-26 (N.Y. Sup. Ct. 1999), *aff'd as modified*, 703 N.Y.S.2d 126 (2000) (a bank was held liable for negligence when the plaintiff's injury occurred near a basement vault, an area that required but did not receive additional security measures).

Indeed, Plaintiff Chen offers no fact suggesting that forced labor and/or peonage had been perpetrated on prior occasions on New York streets during a Falun Gong (or any other) outdoor activity. Nor does she assert any circumstance that would have required the Defendant Organizations to take special steps to protect her. Thus, Plaintiff has not alleged the existence or the breach of any duty of care owed to her by the Defendant Organizations as required for her negligent security claim, nor has she set out facts to sustain the contention that she was foreseeably injured by such a breach.

## CONCLUSION

The SAC against the Defendant Organizations does not satisfy the rules of pleading laid out by the United States Supreme Court in *Twombly* and *Iqbal*. As was true of the original Complaint and of the FAC, and as is apparent in the third attempt to comply with the applicable rules and standards, no count stated in the current iteration against the Defendant Organizations provides "a short and plain statement of the claim showing that the pleader is entitled to relief," as required by Rule 8(a)(2), Federal Rules of Civil Procedure. This Court provided Plaintiff two chances to repair the pleading defects, and she has shown that she cannot do so.

The Second Amended Complaint should therefore be dismissed with prejudice as to the Defendant Organizations.

Respectfully submitted,

/s/

_____

HUMAN RIGHTS LAW FOUNDATION

25

By: Terri E. Marsh
1701 Rhode Island Ave., N.W.
Fourth Floor
Washington, D.C. 20036
Tel.: (202-697-3858)
Dated: February 16, 2021                          Email: Terri.marsh.hrlf@gmail.com