**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| **JINGYU CHEN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Civil Action No. 19-cv-05387 (PMH)** |
| | ) |
| **YONG ZHAO CAI,** _et al.,_ | ) |
| | ) |
| **Defendants.** | ) |

_____)

**DEFENDANT ORGANIZATIONS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS**
**THE SECOND AMENDED COMPLAINT**

Terri E. Marsh
HUMAN RIGHTS LAW
FOUNDATION
1701 Rhode Island Ave. NW
Suite 4-717
Washington D.C. 20036
Tel.: (202-697-3858)
Email: Terri.marsh.hrlf@gmail.com

Dated: May 13, 2021

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

INTRODUCTION ................................................................................................ 2

STANDARD OF REVIEW ..................................................................................... 3

PLAINTIFF'S ALLEGATIONS ................................................................................ 4

ARGUMENT ....................................................................................................... 5

  I.   Plaintiff's SAC Does Not State a Claim Against the Defendant Organizations under a Theory of Respondeat Superior. ................................................................. 5

    A.   The SAC Does Not State Facts Permitting the Inference of an Employment Relationship Between Any Defendant Organization and Cheung. .................................... 6

    B.  The SAC Presents No Facts to Show that Any Alleged Misconduct Was Within the Scope of a Duty the Employee Had to the Defendant Organizations. ............................... 6

  II.     Plaintiff Has Not Stated Claims for Negligent Hiring or Supervision. ..................... 10

    A.   The SAC Does Not Allege That the Defendant Organizations Had Notice of Cheung's Supposed Propensity for Sexual or Other Inappropriate Conduct. ............... 11

    B.   The SAC Does Not Allege that Plaintiff's Injuries Occurred on the Premises of the Defendant Organizations. .................................................................................... 12

  III.    Plaintiff Has Not Adequately Pleaded a Claim for Negligent Security. ................... 13

  IV.    Plaintiff Has Not Stated a Claim under § 1595 (a) .............................................. 14

of the Trafficking Victims Protection Reauthorization Act. ....................................... 14

    A.   Plaintiff Has Not Pleaded the Elements of a Peonage Claim under § 1581. ......... 14

    B.   Plaintiff Has Not Pleaded the Elements of a Forced Labor Claim under § 1589. . 15

  V.    The RICO Claims Also Fail to Satisfy the Applicable Pleading Requirements. ...... 19

    A.   Plaintiff Has Not Adequately Pleaded that the Defendant Organizations Shared the Common Fraudulent Purpose of Any Alleged Enterprise. ...................................... 20

    B.   Plaintiff Has Not Adequately Pleaded that the Defendant Organizations Engaged in the Predicate Racketeering Acts Directly or Vicariously. ....................................... 20

    C.   Plaintiff Has Not Adequately Pleaded a "Pattern" of Racketeering Activity. ....... 21

    D.   Plaintiff Has Not Adequately Alleged That the Defendant Organizations Managed the Affairs of any "Enterprise." ................................................................................. 22

    E.   Plaintiff Has Not Adequately Alleged That She Was Injured as a Result of Any RICO Violations by the Defendant Organizations. .................................................... 23

CONCLUSION .................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Adorno v. Corr Servs. Corp.* 312 F. Supp.2d 505 (S.D.N.Y. 2004) ................................8, 9, 12

*Agency Holding Corp. v. Malley-Duff & Assoc, Inc*., 483 U.S. 143 (1987)............................22

*Amendolare v. Shenkers Int'l Forwarders, Inc.,* 747 F. Supp. 162 (E.D.N.Y. 1990) .............21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..............................................................................passim

*Bailey v. State of Alabama*, 219 U.S. 219 (1911) ............................................................14, 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).............................................................passim

*Biggs v. City of New York*, 2010 WL 4628360 (S.D.N.Y. 2010) .....................................10, 12

*Cepeda v. Coughlin*, 128 A.D.2d 995 (1987) ...........................................................................9

*Chavis v. Chappius*, 618 F.3d 162 (2d Cir.2010) .....................................................................4

*Chen v. Lilis, 200 W. 57th Corp*., 2020 WL 7774345(S.D.N.Y. Dec. 30, 2020) .....................4

*Cortec Inds., Inc.* v. *Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ......................................18

*Crab House of Douglaston, Inc. v. Newsday, Inc.*, 418 F. Supp.2d 193 (E.D.N.Y 2006).......23

*Cronin v. Hertz Corp*., 818 F.2d 1062 (2d Cir. 1987) .............................................................12

*Cruz v. FXDirectDealer*, LLV, 720 F. 3d 115 (2d Cir. 2013) ................................................20

*De Sole v. Knoedler Gallery, LLC*, 137 F. Supp.3d 387 (S.D.N.Y. 2015)................................6

*DeFalco v. Bernas,* 244 F. 3d 286 (2d Cir. 2001) ..................................................................22

*Doe v. Alsaud*, 12 F. Supp.3d 674 (S.D.N.Y. 2014) .......................................................6, 8, 11

*Ehrens v. Lutheran Church*, 385 F.3d 232 (2d Cir. 2004)......................................................12

*Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp.3d 156 (S.D.N.Y. 2019)........................18

*GemShares, LLC* v. *Kinney*, No. 17 Civ. 844 (CM), 2017 WL 2559232 (S.D.N.Y. June 2, 2017) .................................................................................................................................2

*H.J. Inc. v. NW Bell Tel. Co.,* 492 U.S. 229 (1989) ...............................................................22

*Hayden v. Paul Weiss, Rifkind, Wharton & Garrison*, 955 F. Supp. 248 (S.D.N.Y. 1997)....22

*Hemi v. City of New York*, 559 U.S. 1 (2010)........................................................................23

*Holmes v. Securities*, 503 U.S. 258 (1992)............................................................................23

*Iannelli v. Powers*, 114 A.D.2d 157, 498 N.Y.S.2d 377 (2d Dep't)......................................13

*In re SAIC Inc., Derivative Litig*., 948 F. Supp.2d 366 (S.D.N.Y. 2013)...............................10

*Ishmail v. ATM Three, LLC*, 77 A.D.3d 790 (2d Dep't 2010)................................................13

*John Doe 1 v. Board of Educ. of Greenport Union Free Sch. Dist*., 955 N.Y.S.2d 600 (2d Dep't 2012)....................................................................................................................12

*Kerik v. Tacopina*, 64 F. Supp.3d 542 (S.D.N.Y 2014).........................................................23

*Lawson v. Rubin*, 2018 WL 2012869 (E.D.N.Y. April 29, 2018) ...........................................19

*Loucks v. Cmty. Home Care Servs*., 209 A.D.2d 484 (1994) ...................................................6

*Makowski v. United Bdb & Joiner of Am*., 2010 WL 3026510 (S.D.N.Y 2010)....................21

*Milosevic v. O'Donnell*, 2010 WL 3432237 (N.Y. Sup.Ct. 2010), *aff'd*, 934 N.Y.S.2d 375 (1st Dep't 2011)....................................................................12

*Moskal v. Fleet Bank*, 180 Misc. 2d 819 (N.Y. Sup. Ct. 1999), *aff'd as modified*, 703 N.Y.S.2d 126 (2000) ........................................................................14

*Nobel v. Weinstein*, 335 F. Supp.3d 504 (S.D.N.Y. 2018) ...............................................16, 19

*Ortiz v. N.Y. City Hous. Auth.*, 22 F. Supp.2d 15 (E.D.N.Y. 1998), *aff'd*, 198 F.3d 234 (2d Cir. 1999)..................................................................................13

*Papasan v. Allain*. 478 U.S. 265 (1986) ..................................................................................4

*Ratha v. Phattana Seafood Co., Ltd.*, 2017 WL 8293174 (C.D. Cal. 2017)...........................16

*Read v. Cornning Inc.*, 371 F. Supp.3d 87 (W.D.N.Y. 2019)................................................11

*Reves v. Ernst & Young*, 507 U.S. 170 (1993)......................................................................22

*Riviello v. Waldron*, 47 N.Y.2d 297 (N.Y. 1979) ...................................................................8

*Robinson v. Page,* 2019 WL 2209237 (S.D.N.Y. May 20, 2019) .............................................5

*Samuels v. Fisher,* 168 F.Supp.3d 625 (S.D.N.Y. 2016) ........................................................19

*Schaeffer v. Vera Wang Bridal House, Ltd.*, 64 F. Supp.2d 286 (S.D.N.Y. 1999)............13, 14

*Sims v. Bergano*, 3 N.Y.2d 531 (N.Y. 1957) ..........................................................................9

*Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178 (2d Cir. 2008) ......................4, 22

*Sulastri v. Halsey*, 2014 WL 4904718 (E.D.N.Y. Aug. 21, 2014) .........................................14

*Tellez v. OTG Interactive, LLC*, 2016 WL 5376214 (S.D.N.Y. Sept. 26, 2016 .......................5

*Trump Tower v. Palazzolo*, 346 F. Supp.3d 432 (S.D.N.Y. 2018) .........................................21

*U.S. Fire Ins. Co., v. United Limousine Serv.*, Inc., 303 F. Supp.2d 432 (S.D.N.Y. 2004)....22, 23

*U.S. v Afyare*, 632 Fed. Appx. 272 (6th Cir. 2016) ...............................................................16

*United States v. Sabhnani*, 599 F.3d 215 (2d Cir. 2010) .......................................................14

*VFP Investments I LLC v. Foot Locker, Inc.*, 26 N.Y.S.3d 727 (N.Y. Sup. Ct. 2015), *aff'd*, 48 N.Y.S.3d 27 (1st Dep't 2017)...................................................................................7

*Zamore v. Bar None Holding Co.*, LLC, 73 A.D.3d 601 (1st Dep't 2010) ............................13

**Statutes**

18 U.S.C. §1581 .....................................................................................................................14

18 U.S.C. §1589 ..........................................................................................................14, 15, 16

18 U.S.C. §1591 ..........................................................................................................14, 16

18 U.S.C. §1961 .....................................................................................................................22

18 U.S.C. §1962 .....................................................................................................................21

**Other Authorities**

Larry Ong, *Falun Dafa Marks 25 Years With Grand Parade in Manhattan,* THE EPOCH TIMES (May 12, 2017),...........................................................................................................18

**Rules**

Fed. R. Evid. 201(b)(2) ............................................................................................................2

Federal Rule of Civil Procedure 12(b)(6) ................................................................................3

Federal Rule of Civil Procedure 8(a)(2) ............................................................................4, 24

**Defendant Organizations' Memorandum of Law
in Support of Their Motion to Dismiss
the Second Amended Complaint**

Defendants New York Falun Dafa Association Corp.; The Eastern US Buddha's Study (Falun Dafa) Association, Inc.; Falun Dafa Information Center, Inc.; Friends of Falun Gong Inc.; NY Metropolitan Falun Dafa Association Inc.; International Falun Dafa Association, Inc.; Falun Gong Club of Orange County, Inc.; and New York Upstate Falun Dafa Association, Inc. ("the Defendant Organizations"), respectfully submit this memorandum of law in support of their motion to dismiss the Second Amended Complaint herein ("the SAC") for failure to state a claim against them, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff seeks to hold the Defendant Organizations[1] responsible for the alleged misconduct of their purported employee, Defendant Cheung. However, the SAC does not set forth a single fact tending to show that the Defendant Organizations have any connection to the abuses that Plaintiff attributes to Mr. Cheung, including his supposedly forcing her by threats of sexual assault to participate in Falun Gong activities, or to apply for asylum in the United States.

The Court has permitted Plaintiff to amend her Complaint twice to state causes of action cognizable under Rule 12(b)(6). Plaintiff has streamlined her claims slightly, reducing to a "mere" 237 numbered paragraphs over 35 pages (the First Amended Complaint ("FAC") occupied 489 paragraphs spread over 76 pages). However, the SAC still fails to satisfy the pleading standards required by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

---

[1] Plaintiff repeatedly refers to the Defendant Organizations as the "Falun Dafa religion." *See, e.g.*, SAC ¶ 27. But the Defendant Organizations are legal persons formed under the New York Not-for-Profit-Corporation Law. They are not "the Falun Dafa religion" any more than the Knights of Columbus organization is the Roman Catholic Church. Obviously, a religion is not a legal entity and may not be sued. Broad and unsubstantiated allegations about a religion do not satisfy Plaintiff's legal obligation to state cognizable claims against each and every Defendant named in the SAC. And ideological grievances against a religion as such do not come within the purview of the judiciary, under the First Amendment.

The SAC includes the same three defendants that had been added by Plaintiff in her FAC: Falun Dafa Information Center, Inc.; Upstate New York Falun Dafa Association, Inc.; and the Falun Gong Club of Orange County, Inc. However, the Falun Gong Club of Orange County was not in existence at any time relevant to Plaintiff's claims. Two of the original Defendants, the New York Falun Dafa Association, Inc., and International Falun Dafa Association, Inc., likewise did not come into being until after most of the alleged misconduct.[2] Despite Plaintiff's several opportunities to fix the fatal deficiencies in her pleading, she has not done so. The SAC against the Defendant Organizations should now be dismissed with prejudice.

## INTRODUCTION

This is an action alleging injuries suffered at the hands of Defendants Yong and Qian Cai, Cheung, and Li, who purportedly subjected Plaintiff to sexual slavery, forced labor, and forced participation in religious events and festivities. (SAC ¶¶ 212-220). The individual Defendants dispute Plaintiff's allegations. Cheung, for example, contends that he tried to help Plaintiff gain asylum in the U.S. based on her professed adherence to the Falun Gong religion, which would subject her to persecution in China, and did not force her into sexual slavery, labor, or anything else. None of those acts, however, even assuming that they did occur as she alleges, were directly or vicariously committed, planned, or directed by, or were even known to, the Defendant Organizations.

Plaintiff's entire case against these Defendants turns on the purported status of Cheung, as an employee or agent of all eight entities, presumably all at the same time. But he was not; and Plaintiff has nothing but bare and conclusory allegations that he was. Nor does the SAC

---

[2] The SAC contends that Plaintiff was subjected to abuses from May 2016 through January 2018. As demonstrated in the certificate of incorporation attached as Exhibit A to the Declaration of Terri Marsh, Esq., however, the Falun Gong Club of Orange County, Inc. was not formed until August 28, 2018. The certificates of incorporation attached as Exhibits B and C show that the New York Falun Dafa Association Corp. and International Falun Dafa Association, Inc. were incorporated on November 28, 2017, and July 11, 2017, respectively. This Court may take judicial notice of these dates of formation because they can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). *See GemShares, LLC* v. *Kinney*, 2017 WL 2559232 at *17 (S.D.N.Y. June 2, 2017) ("In considering a motion to dismiss, a court may take judicial notice of matters of public record, including documents filed with public bodies, such as articles of incorporation") (citations omitted).

satisfactorily allege that the Defendant Organizations are responsible for Cheung's alleged misconduct on other grounds.

At its core, this case seems to stem from hurt feelings related to the breakdown of an intimate relationship between Plaintiff and Defendant Cai, Plaintiff's freely pledged loyalty to Falun Gong as a religion or ideology (as was her right), and her subsequent change of heart (also her right).[3] But Plaintiff's disappointments and her disaffection from Falun Gong, however unfortunate, cannot entitle her to the legal relief she seeks against the Defendant Organizations that had nothing to do with her or with any injury she claims to have suffered.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails to allege "sufficient factual matter" that, if "accepted as true, … state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible only if the alleged facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.*, 556 U.S. at 678, citing *Twombly,* 550 U.S. at 557 (additional citations omitted).

Although the Court must accept all well-pleaded factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual [statement]." *Papasan v. Allain*,

---

[3] Chen expressed unswerving devotion to Falun Gong in her asylum petition (attached to Defendant Cheung's Answer, ECF No. 94), and utter disdain for the religion in the materials she has filed in this Court as part of the case at bar. In her application, for example, filed on 2/12/2021, she wrote "I will never give up my faith" and "if I go back to China, I will face immediate persecution, torture and possible death." *See* section B.3.A of Form I-589. At the bottom of the same form she added, "I am aware that the knowing placement of false information on the Form I-589 may also subject me to civil penalties under 8 U.S.C. § 1324c and/or criminal penalties under 18 U.S.C. § 1546(a)." Yet in her Memorandum of Law in Support of her Opposition to Plaintiff's Motion to Dismiss, ECF No. 77, submitted on 7/13/2020, Plaintiff described the faith that she had said she would "never give up" as a "shadow world underground organization that masquerades as a religion." *Id.* at 4.

478 U.S. 265, 286 (1986) (citations omitted); *see also Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 183 (2d Cir. 2008) ("Although we construe the pleadings liberally, 'bold assertions and conclusions of law will not suffice'") (citation omitted). Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," and a complaint "has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief,'" as required by Federal Rule of Civil Procedure 8(a)(2), *Iqbal,* 556 U.S. at 679, it does not satisfy the rules of pleading and should be dismissed. The SAC now before this Court is precisely of that kind.

The plausibility standard, as articulated by the Supreme Court in *Twombly* and *Iqbal,* is intended to avoid the "potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence to support [the plaintiff's] claim." *Twombly,* 550 U.S. at 559-60 (internal quotations omitted). These cases provide this Court with all the reasons it needs to dismiss the SAC against the Defendant Organizations forthwith.

## PLAINTIFF'S ALLEGATIONS

Most of Plaintiff's allegations (i) merely parrot – or at best paraphrase – the wording of the elements of her claims without further factual development, or (ii) plead facts that are immaterial, or that for other reasons, do not demonstrate more than the mere possibility of misconduct attributable to the Defendant Organizations that might afford Plaintiff an entitlement to relief.

With respect to the former, "merely recit[ing] the legal elements of a successful claim ... does not meet the plausibility pleading standard." *See Twombly,* 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do"). *See also Chen v. Lilis, 200 W. 57th Corp.,* 2020 WL 7774345 at *2 (S.D.N.Y. Dec. 30, 2020) (quoting *Iqbal,* 556 U.S. at 678); *see also Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) ("Even in a pro se case … threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Similarly, with respect to the latter, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678

(citing *Twombly*, 550 U.S. at 570). Where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has "alleged – but it has not shown – that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Iqbal*, 550 U.S. at 678-79. Allegations that are irrelevant or of little consequence to the elements of a claim obviously will not suffice. *See Tellez v. OTG Interactive, LLC*, 2016 WL 5376214 at *5 (S.D.N.Y. Sept. 26, 2016) (In a case alleging fraudulent inducement by omission requiring proof of an obligation of disclosure, where "Plaintiff … makes no argument that such a duty existed except by making an inapposite analogy … which is irrelevant to the existence and scope of any duty owed between the parties here," the count was dismissed for failure to state a claim.). And the invective against Falun Gong as a religion, repeated throughout the SAC, has no place in a proper pleading, and certainly does not justify the failure to comply with the Rules of Civil Procedure.[4]

Plaintiff's allegations as to the Defendant Organizations contravene these rules, and they do not allow the Court to draw the reasonable inference that these Defendants are liable for any of the misconduct alleged, even if can be shown to have occurred.

## ARGUMENT

### I.     Plaintiff's SAC Does Not State a Claim Against the Defendant Organizations under a Theory of Respondeat Superior.

Plaintiff continues to allege that the Defendant Organizations are vicariously liable for Defendant Cheung's alleged misconduct towards her under a theory of respondeat superior. *See, e.g.*, SAC ¶¶ 115-128. But the SAC offers no evidence of an employment relationship between Cheung and any Defendant Organization, much less any other facts sufficient to support these allegations under the standards of pleading required by the Supreme Court in *Twombly* and *Iqbal*.

---

[4] *See also*, *Robinson v. Page*, 2019 WL 2209237 at *3 (S.D.N.Y. May 20, 2019) ("Plaintiff's complaint and other submissions do not comply with Rule 8 because they are lengthy, include unnecessary and unimportant details, and lack sufficient relevant details to state a claim. [...]; *Jablow v. Agnew*, 30 F. Supp. 718, 720 (S.D.N.Y. 1940) ("The allegations contained in paragraphs of the amended complaint, […] are immaterial and are unnecessary allegations…they are not proper and are immaterial and irrelevant….".).

To state a claim for respondeat superior, a plaintiff must present facts showing, among other things, **both**: (i) the existence of an employment, agency, or similar relationship; *see Loucks v. Cmty. Home Care Servs.*, 209 A.D.2d 484, 484-485 (1994); *see also De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 417 (S.D.N.Y. 2015), **and** that (ii) the alleged wrongdoing was undertaken within the scope of the employee's duties and in furtherance of the employer's interests. *Id.*; *see also Doe v. Alsaud*, 12 F. Supp.3d 674, 677 (S.D.N.Y. 2014). However, Plaintiff offers no evidence that Cheung was employed by any Defendant Organization much less that any misconduct was within the scope of his duties to them. The reason is that no such evidence exists.

A.   The SAC Does Not State Facts Permitting the Inference of an Employment Relationship Between Any Defendant Organization and Cheung.

Plaintiff never shows that there was an employment relationship between Cheung and any of the Defendant Organizations. Instead, Plaintiff lumps **all** of the separate Organizations together, and makes, in identical allegations, the counterintuitive claim that somehow **all of them** were Cheung's employer. SAC ¶ 16; *see also* SAC ¶¶ 122, 140, 160. Plaintiff does not explain how eight legal entities with different identities, different headquarters, and different staffs could have employed the very same person at the very same times. She ignores the facts that one of the Defendant Organizations did not exist at any time relevant to her claims, and that two others came into being after most of the misconduct had allegedly occurred.[5]

B.   The SAC Presents No Facts to Show that Any Alleged Misconduct Was Within the Scope of a Duty the Employee Had to the Defendant Organizations.

1.   Scope of Duty Generally

To succeed under a respondeat superior theory, a plaintiff must also show that the alleged wrongdoing was undertaken within the scope of the employee's duties and was thus in furtherance of the employer's interests. *Alsaud,* 12 F. Supp.3d at 677. Here, while Plaintiff accuses Defendant Cheung of serious and possibly even criminal acts, she does not contend that

---

[5] *See supra,* n. 2.

6

they were motivated by, or were intended to fulfill, any duty he had to any of the Defendant Organizations. Instead, Plaintiff merely parrots the wording of the scope-of-duty requirement found in caselaw, setting out no facts which, if true, would raise her right to relief above the purely hypothetical level. *See, e.g.*, SAC ¶ 123 (the naked assertion that the supposed misconduct "was within the scope of [Cheung's] duties.").

The Supreme Court has made clear that allegations that do no more than list the elements of a successful claim do not satisfy Rule 8(a). *Twombly,* 550 U.S. at 555 (2007); *see also VFP Investments I LLC v. Foot Locker, Inc.*, 26 N.Y.S.3d 727 (N.Y. Sup. Ct. 2015), *aff'd*, 48 N.Y.S.3d 27 (1st Dept. 2017) (dismissing complaint because it lacked factual allegations to support the "conclusory statements … that [one of the employees' conduct at issue was] within the scope of their employment"). Here, no facts are pleaded that could sustain the conclusion that whatever Cheung may have done to Plaintiff was within the scope of his employment with any, much less all, of the Defendant Organizations.

Even where Plaintiff makes what appear to be factual allegations, they are not sufficient to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *Twombly,* 550 U.S. at 570. So even if, as Plaintiff avers, Cheung was employed (by someone) to recruit individuals to participate in Falun Gong events), *see, e.g.,* SAC ¶ 115-28, 136, 149, she does not offer any explanation of how what Plaintiff says he did to her could have come within the scope of any such employment.  A "recruiter," presumably, is someone engaged to identify potential employees or volunteers, not to abuse them.[6] As in *Iqbal*, Plaintiff here has not "nudged [her] claims … across the line from conceivable to plausible." 556 U.S. at 680. Her failure to provide any facts from which the Court might draw the reasonable inference that Cheung's alleged actions came within any scope of duty is fatal to her claims against the Defendant Organizations.

---

[6] Forced labor and peonage are likewise surely no part of what a "recruiter" is hired to do.

Cheung is accused of threatening to subject Plaintiff to "threats of physical and sexual violence" to force her to work against her will. *See* SAC ¶ 119. *See also id.* ¶¶ 104, 132, 220. New York courts have consistently held what is obvious: sexual misconduct and similar tortious behavior stemming from personal motives "do not further an employer's business, even when committed within the employment context." *Alsaud*, 12 F. Supp.3d at 677-78. The doctrine of respondeat superior simply does not apply to sexual violence or threats. Indeed, "New York courts have repeatedly found no vicarious liability for claims involving such misconduct." *Adorno v. Corr Servs. Corp.*, 312 F. Supp.2d 505, 517 (S.D.N.Y. 2004) (citations omitted). Plaintiff offers no reason for this Court to deviate from those consistent precedents. And indeed, although she repeatedly insists without evidence that Cheung was acting "within the scope of [his] employment" (presumably with all eight Defendant Organizations), *e.g.*, SAC ¶ 123, she also admits that his alleged assaults "were for his own personal pleasure and gratification." *Id.* ¶ 105.

2.   The Scope of Duty Test.

This Court set out in *Adorno* the bases to assess whether a respondeat superior claim sufficiently alleges the scope-of-duty prerequisite. The factors are: (1) the time, place, and occasion for the act giving rise to the complaint, (2) the history of the relationship between employer and employee, (3) whether the act is of a type commonly performed by such an employee, (4) the extent of departure from normal methods of performance, and (5) whether the specific act was one the employer could reasonably have anticipated. After a review of these factors, the *Adorno* Court concluded that the respondeat superior contentions failed, although that case presented far more evidence of employer involvement than does the SAC here. *Adorno*, 312 F. Supp.2d at 516-18 (citing *Riviello v. Waldron*, 47 N.Y.2d 297, 302 (N.Y. 1979)).

The SAC fails even to allege that any of the factors articulated in *Riviello* and *Adorno* are satisfied. Plaintiff Chen does not claim that she was subjected to threats or violence through any act of the Defendant Organizations, on their property, or to promote their objectives. She presents or alludes to no evidence of the history of the relationship between Cheung and the

Defendant Organizations. No facts are alleged to suggest that the Defendant Organizations encouraged or even tolerated such outrageous conduct. And obviously, committing acts of physical and sexual violence, much less carrying out such abuse to force someone to work, falls outside of the job description of a recruiter, nor does Plaintiff contend otherwise.

The fifth factor stated by the *Adorno* Court, is whether the "acts involved … could reasonably have been anticipated by [the] employer." 312 F. Supp.2d at 516-517. And while the "employer need not have foreseen the precise act or the exact manner of the injury" that occurred, "the **general type of conduct** [must] have been reasonably expected." *Id.* at 516 (citations omitted). Thus, employers have been found vicariously liable for physical assaults where employee's job might foreseeably require him to use force. *See Sims v. Bergano*, 3 N.Y.2d 531, 534-536 (N.Y. 1957) (assault of unruly patron by bartender hired to maintain order on the premises was foreseeable.). *See also Cepeda v. Coughlin*, 128 A.D.2d 995, 996-997 (1987) (where prison guards used allegedly excessive force in returning inmates to their cells after a fight, actions held to be within the scope of their employment "since [c]ustody and control of inmates … are among the primary duties and responsibilities of correction officers" and "physical force is often required and used to control inmates").

Here, however, there is not a single well-pleaded fact to suggest that, even if he was an employee of some Defendant, Cheung's job duties included anything remotely related to the alleged threats of sexual and physical violence (much less forced labor or peonage). As discussed, *supra* section I.B.2, there is simply no allegation that the Defendant Organizations could reasonably have anticipated that an "organizer" or "recruiter" – even if that is what Cheung was employed to do – would threaten or commit sexual violence to coerce someone to participate in events against her will. As in *Adorno*, where this Court found that the employer could not have reasonably anticipated the misconduct because the employee's duty "in no way mandated any kind of physical contact, let alone sexually oriented physical contact," *Adorno*, at 517, here, the duties of a "recruiter," as alleged in the SAC, do not involve any physical contact,

or "threats of physical and sexual violence" (to force Plaintiff much less anyone else to participate in Falun Gong public events.).

Plaintiff alleges that Cheung's abusive conduct was foreseeable based on his one-and-a-half years of employment with (all of) the Defendant Organizations, SAC ¶¶ 130, 134, 156, or his supposed "enslavement" of Plaintiff for that same period, *id.* ¶¶ 134, 140. But the SAC offers no explanation as to how these or any other facts might permit the reasonable inference that the Defendant Organizations could or should have anticipated Cheung's misconduct before it occurred. Rule 8(a) requires a plaintiff to allege nonconclusory facts that support more than "the mere possibility of misconduct," *Iqbal,* 556 U.S. at 679. Moreover, Courts in this Circuit have declined to infer knowledge of illegal schemes based on far longer involvement. *See, e.g., In re SAIC Inc., Derivative Litig.*, 948 F. Supp.2d 366, 387 (S.D.N.Y. 2013) (absent other evidence of actual or constructive knowledge, duration alone will rarely suffice).

For all these reasons, the claims suggesting that the Defendant Organizations are liable for Cheung's misdeeds under the doctrine of respondeat superior, because they were his employers, fail the Twombly/Iqbal test, and should be dismissed with prejudice.

## II.   Plaintiff Has Not Stated Claims for Negligent Hiring or Supervision.

In New York,

> a claim for negligent hiring, supervision, and retention requires a plaintiff to show: (1) that the tortfeasor and defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels.

*James Biggs v. City of New York*, 2010 WL 4628360 at *9 (S.D.N.Y. 2010). Even if the SAC adequately pleaded that Cheung was an employee of the Defendant Organizations, which it does not, it fails to satisfy either of the last two elements of negligent hiring or supervision. First, there is no plausible allegation that the Defendant Organizations knew or should have known of any **propensity** of Cheung's for violence or assault. Second, Plaintiff does not and cannot allege that

any abuse occurred on the premises of the Defendant Organizations or using their "chattels." As with her other claims, these allegations do no more than parrot the wording of the elements of her causes of action and offer no facts that would establish liability if they were proved.

A. The SAC Does Not Allege That the Defendant Organizations Had Notice of Cheung's Supposed Propensity for Sexual or Other Inappropriate Conduct.

Claims for negligent hiring, supervision, and retention require a plaintiff to point to **specific prior misconduct** by the employee as the basis from which to infer the employer's knowledge. *Alsaud,* 12 F. Supp.3d at 680-81. The SAC does not contain a single allegation of any prior bad acts by Cheung. Instead, it simply states as fact that the Defendant Organizations "knew that Mr. Cheung used threats of both sexual and non-sexual violence… to recruit … Ms. Chen and other similarly situated individuals." SAC ¶ 154. Such threadbare assertions are obviously insufficient. *Twombly*, 550 U.S. at 555 ("A formulaic recitation of the elements of a cause of action will not do;" *see also Read v. Corning Inc.*, 371 F. Supp.3d 87, 92 (W.D.N.Y. 2019) ("[w]here a defendant's knowledge … is an element of a tort claim, a bare assertion that a defendant 'knew or should have known' of that fact or circumstance is insufficient to state a claim.").

As she did in the context of her vicarious liability claim, Plaintiff asks the Court to infer the Defendant Organizations' purported knowledge of Cheung's prior misconduct from her unsupported theory that the Defendants Organizations had all employed Cheung for 18 months (SAC ¶ 156). However, as noted in section I.B.2, significant case law makes clear that "duration alone" is not sufficient to support an inference of knowledge. *SAIC,* 948 F. Supp.2d at 387. Moreover, to prevail on this prong of a negligent hiring and retention claim, a Plaintiff is required to allege specifically that the Defendants knew or should have known that Cheung had a propensity for sexual and physical violence: that is, bad acts of the very same kind as those that are alleged to have occurred here. *Alsaud,* 12 F. Supp.3d at 680. However, as in *Alsaud,* where this Court found that the complaint did not "allege a single prior act or allegation of the [relevant]

11

misconduct committed by the [defendant] or a fact suggesting that the defendant knew or should have known of any such prior acts," *id.*, the SAC does not point to any facts that might support the specific prior conduct standard as required for this claim.[7]

The complete absence of factual allegations concerning any prior sexual or physical assaults ( much less forced labor or peonage) by Cheung of which the Defendant Organizations might or should have had knowledge is fatal to Plaintiff's negligent hiring and retention claims, and mandates that they be dismissed.

B. The SAC Does Not Allege that Plaintiff's Injuries Occurred on the Premises of the Defendant Organizations.

Putting aside Plaintiff's failure to plead any kind of master-servant relationship between Cheung and the Defendant Organizations, Plaintiff's negligent hiring, supervision, and retention claims also fail for the independent reason that his alleged misconduct did not occur anywhere near the Defendant Organizations' premises and did not involve their goods. *Biggs,* 2010 WL 4623860 at *9; *see also Ehrens v. Lutheran Church*, 385 F.3d 232, 236 (2d Cir. 2004) (affirming dismissal of negligent supervision claim against church when the minister's bad behavior did not occur on church premises); *John Doe 1 v. Board of Educ. of Greenport Union Free Sch. Dist.*, 955 N.Y.S.2d 600, 602-603 (2d Dep't 2012) (dismissing negligent hiring and supervision claims where the school employee's misconduct occurred off school grounds); *Milosevic v. O'Donnell*, 2010 WL 3432237, at *2 (N.Y. Sup.Ct. 2010), *aff'd*, 934 N.Y.S.2d 375 (1st Dep't 2011) (dismissing negligent supervision claim where employer "neither owned nor operated the premises in which plaintiff allegedly was injured").

Here, quite obviously, the Defendant Organizations did not own or control the places where Plaintiff claims she was abused, such as, the New York City streets where Plaintiff says she was forced to attend "**outdoor** events and activities," SAC ¶¶ 169, 171, and was

---

[7] *See Adorno*, at 518, citing *Cronin v. Hertz Corp.*, 818 F.2d 1062, 1068 (2d Cir. 1987) for a discussion of the reasoning behind the differences between the foreseeability test in the context of a vicarious liability claim and that required here in the context of a negligent hiring and retention claim.

"represented **to the public** as a supporter" of the Falun Gong religion. *See* SAC ¶¶ 122, 142 (emphasis added). The naked assertion that that the bad acts took place "within a zone of [the Defendant Organizations'] control," SAC ¶ 169, is another illustration of her simply reciting the elements of a cause of action, even when they openly contradict other portions of her pleading.

### III.   <u>Plaintiff Has Not Adequately Pleaded a Claim for Negligent Security</u>.

To state a claim for negligent security, a plaintiff must establish that (1) the owner (or occupier) of the premises where the injury occurred owed him or her a duty of care, (2) the duty was breached, (3) injury resulted from the breach, and (4) the injury was foreseeable. *See Schaeffer v. Vera Wang Bridal House, Ltd.*, 64 F. Supp.2d 286, 292 (S.D.N.Y. 1999) (citations omitted). Plaintiff Chen does not allege facts sufficient to support these elements.

Like negligent supervision, a negligent security claim requires a plaintiff to show that the injury she sustained occurred on or near a defendant's premises, and that it was foreseeable, *i.e.*, "there [was] a likelihood of conduct on the part of third persons … which [was] likely to endanger the safety of the visitor." *Schaeffer*, 64 F. Supp.2d at 292-293 (quoting *Iannelli v. Powers*, 498 N.Y.S.2d 377, 380 (N.Y. App. Div. 1986), *leave to appeal den.*, 506 N.Y.S.2d 1027 (N.Y. 1986)). Thus, in *Ortiz v. N.Y. City Hous. Auth.*, 22 F. Supp.2d 15, 24 (E.D.N.Y. 1998), *aff'd*, 198 F.3d 234 (2d Cir. 1999), the Court found  that there was sufficient evidence for the jury to conclude that the assault of Plaintiff was foreseeable because the defendant Housing Authority failed to provide a working lock on the outside door of the building, and it was known that the project was plagued by rampant acts of violence and drug-related crime. But in *Zamore v. Bar None Holding Co., LLC*, 73 A.D.3d 601 (1st Dep't 2010), by contrast, the court held that while a nightclub operator owed a duty of care to customers, injuries caused by a glass thrown by a patron were not evidence of a breach of that duty, because such an incident could not have been foreseen. *See also Ishmail v. ATM Three, LLC*, 77 A.D.3d 790, 791-92 (2d Dep't 2010).

Plaintiff does not allege that any injury occurred on or near the premises of the Defendant Organizations. Instead, she contends that Cheung abused her on the public streets of

New York, which are quite obviously not "within a zone of [the Defendant Organizations'] control," *id.* ¶ 169. And as has already been shown, the SAC also fails to allege foreseeability through demonstration that similar dangerous conduct had taken place in that area earlier, *see Schaeffer*, 64 F. Supp.2d at 294 (citations omitted). Nor does she allege that because of the unique nature of the circumstances the Defendant Organizations were obligated to take additional steps to minimize any risk of danger to her. *See Moskal v. Fleet Bank*, 180 Misc.2d 819, 825-26 (N.Y. Sup. Ct. 1999), *aff'd as modified*, 703 N.Y.S.2d 126 (2000) (a bank was held liable for negligence when the plaintiff's injury occurred near a basement vault, an area that required but did not receive additional security measures). Plaintiff's silence on these matters is fatal to her claim.

Thus, Plaintiff has not set out the basis for her negligent security claim.

### IV.   Plaintiff Has Not Stated a Claim under § 1595 (a) of the Trafficking Victims Protection Reauthorization Act.

The Trafficking Victims Protection Reauthorization Act ("TVPRA") was enacted to address the problem of human trafficking into and from the United States. Although it is primarily a criminal statute, it also makes available a civil remedy. *See* 18 U.S.C. § 1595(a). Civil TVPRA claims may be filed for alleged violations of several provisions of the statute, including §§ 1581 (peonage), 1589 (forced labor), and 1591 (sex trafficking).[8] Here Plaintiff claims that the Defendant Organizations violated §§ 1581 and 1589(b). Both claims warrant dismissal.

### A.   Plaintiff Has Not Pleaded the Elements of a Peonage Claim under § 1581.

Peonage is defined as a condition "[t]he essence of [which] is compulsory service in **payment of a debt**." *Bailey v. State of Alabama*, 219 U.S. 219, 242 (1911) (emphasis added). *See also United States v. Sabhnani*, 599 F.3d 215, 243 (2d Cir. 2010) ("18 U.S.C. § 1581(a) prohibits the holding of a person in 'a condition of peonage,' [which is] compulsory service in payment of a debt …"); *Sulastri v. Halsey*, 2014 WL 4904718, at *11 (E.D.N.Y. Aug. 21, 2014) (peonage "is tied

---

[8] Other criminal acts for which the TVPRA provides the possibility of civil remedies include §§ 1584 (selling a person into slavery), 1582 and 1585-1588 transporting slaves using vessels), 1590 (trafficking related to slavery), and 1592 (unlawful conduct related to documents in furtherance of slavery).

to the discharge of an indebtedness") (citation omitted).  Here, Plaintiff contends that certain individual Defendants (not the Defendant Organizations) forced her to undertake "cleaning of interior of the home, yard work, babysitting, food shopping, cooking, and other activities" without pay. SAC at ¶ 56, *see also* ¶¶ 76, 88, 104, 109. But nowhere does she allege any connection between the work she says she was forced to do and any indebtedness to anyone. This count against the Defendant Organizations fails at the threshold.

     B.  <u>Plaintiff Has Not Pleaded the Elements of a Forced Labor Claim under § 1589.</u>

     Nor does the SAC allege that the Defendant Organizations subjected Plaintiff to forced labor. To succeed on a § 1589 forced labor claim she must establish that her work was obtained through the use or threat of force, serious harm, abuse of the legal process, or a "scheme, plan, or pattern intended to cause [her] to believe that, if [she] did not perform such labor or services, [she] or another person would suffer serious harm or physical restraint," 18 U.S.C. § 1589(a). In the alternative, a plaintiff may plead that a defendant "knowingly benefit[ed], financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services." 18 U.S.C. § 1589(b). Plaintiff has not met the pleading requirements under §§ 1589(a) or 1589(b).

     As an initial matter, Plaintiff nowhere alleges that the Defendant Organizations obtained her labor at all, much less through any use or threat of force. Indeed, she does not even claim that she was forced to "work." Her grievance seems to be that she was coerced by Cheung "to attend and participate in" certain protests, demonstrations, and festivals. *See, e.g.*, SAC ¶¶ 119-22. She does not explain how such activities could be regarded as a form of "labor" or "work."

     Since Plaintiff cannot and does not allege that the Defendant Organizations were directly involved in any forced labor scheme under § 1589(a), to prevail, she must show that they "benefit[ed]" from "participation" in such an arrangement, and that they did so "knowingly." *See* § 1589(b). To the extent that the SAC even addresses these factors, Plaintiff fails to plead facts that would support any of the elements of a 18 U.S.C. § 1589(b) claim.

15

1. Participation.

"Participation" is not defined in § 1589 of the TVPRA, and no reported decision in this Circuit provides the missing definition. However, in a decision reviewing a forced labor claim under the TVPRA in California, *Ratha v. Phattana Seafood Co., Ltd.*, 2017 WL 8293174 (C.D. Cal. 2017), the District Court drew on caselaw interpreting the term "participation" as used in RICO, concluding that it means actual operation and direction ("a party is deemed to have participated only if they took part in the operation and management of the enterprise," *id.* at *4). Here, as in *Ratha*, however, nothing in the SAC comes close to supporting the inference that the Defendant Organizations operated or managed a venture involving forced labor.[9]

This Court has offered a similar understanding of "participation" in a TVPRA § 1591 (sex trafficking) claim, requiring that to be deemed a "participant," a defendant must have acted specifically to further the illicit venture. In *Nobel v. Weinstein*, 335 F. Supp.3d 504, 524 (S.D.N.Y. 2018), for example, this Court dismissed a TVPRA claim because the complaint did not charge the defendant with involvement in conduct "furthering" the alleged sex trafficking scheme. *Id.* at 524. "Because … liability cannot be established by association alone," a Plaintiff must allege far more than "mere **membership** in [a] venture." *Id.* (emphasis added), citing *U.S. v Afyare*, 632 Fed. Appx. 272, 286 (6th Cir. 2016) (holding that to be found culpable, a "defendant must actually participate and commit some overt act that furthers the [criminal] aspect of the venture," and that the TVPRA does not criminalize anything less).

As in *Nobel*, where the plaintiff made several ultimately inadequate "conclusory allegations" about the defendant's involvement in the trafficking" of women, 335 F. Supp.3d at 524, Plaintiff's SAC offers no facts suggesting that the Defendant Organizations did anything to further an alleged forced labor scheme. Plaintiff's bare statement that these Defendants "participated" in some unspecified misconduct (SAC ¶ 200) simply mirrors the wording of this

---

[9] This is discussed further *infra. See* section V. D.

prong of Plaintiff's § 1589(b) claim and is obviously conclusory. To avoid dismissal under Rule 12(b)(6), however, Plaintiff must supply "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 556). In the SAC she has, on her third try, still failed to do so.

Nor are what Plaintiff presents as part of her RICO claim, to the effect that the Defendant Organizations "participated" in Falun Dafa religious events by providing such services as office space, fundraising, event coordination, and other perfectly legitimate professional assistance (SAC ¶ 205), sufficient. As in *Nobel,* where the defendant's regular business responsibilities did not demonstrate "participation" in a TVPRA violation, 335 F. Supp.3d at 524, here, offering administrative support to religious festivals does not mean that the Defendant Organizations participated in the violation of a statute intended to address human trafficking. Nor has Plaintiff suggested how such routine business services might have furthered any purported violation of a § 1589(b) forced labor claim.

2. Benefit.

To prevail on her forced labor claim, Plaintiff must also show that the Defendant Organizations benefitted financially or received something of value from their involvement in the illegal venture. As was true of the earlier versions of her Complaint, many of her allegations, merely state as fact that what Cheung allegedly did to her was "for their benefit." *See, e.g.*, ¶ 123 (Defendant Cheung's "intentional employment [*sic*] of Ms. Chen in various protests and festivals [was] for the benefit of [the Defendant Organizations and the Falun Dafa religion [*sic*]"). In ¶¶ 119-124, the SAC states five times that the Defendant Organizations "benefited" from Plaintiff's attendance at public festivals. But that facially implausible and entirely unsupported allegation does not acquire truth, or sufficiency under Rule 12(b)(6), through repetition.

Apparently, Plaintiff would have the Court believe that the attendance of one additional person at protests, parades, and festivals, somehow "bolstered" the legitimacy of the Falun Gong religion (and therefore presumably benefitted – although it is not clear how – the Defendant

17

Organizations). SAC ¶ 122. Yet absent, once again, are allegations of facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 556. Plaintiff offers no clue to how her presence at any of these events would have even been noticed by anyone, much less than that it would have "bolstered" the Defendant Organizations.[10] Instead, Plaintiff once again offers mere conjectures, mere conclusions, and mere speculation.

Apart from this, Plaintiff also fails to allege the required causal relationship between any benefit the Defendant Organizations purportedly received and their participation in the alleged scheme. To ground a § 1589 claim, Plaintiff must specifically allege that the "benefit" the Defendant Organizations derived came "from" – that is, as a result of – the participation. The statute permits a plaintiff to "bring a civil action against …whoever knowingly benefits … **from** participation in a venture which that person knew or should have known has engaged in" prohibited conduct. 18 U.S.C. § 1595(a) (emphasis added)*; see also Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp.3d 156, 169 (S.D.N.Y. 2019)*,* where the Court described plaintiffs' failure to allege any benefits received by defendants "from their participation," as a "deficiency that is fatal" to plaintiffs' claims" under the TVPRA. Here, insofar as Plaintiff has failed to allege that the Defendant Organizations "participated" in the forced labor in the first place, any benefit they might have received from their purported employee's subjection of Plaintiff to forced labor could not have come from **their** participation in the scheme.

3.   Knowledge.

Plaintiff once again offers nothing but conclusory allegations to suggest that the Defendant Organizations knew or should have known of any scheme to subject her to forced

---

[10]  Considering the huge size of events involving the Falun Dafa religion in New York City, Plaintiff's argument is even more farfetched and implausible. Thousands of people attended these events. *See, e.g.*, Larry Ong, *Falun Dafa Marks 25 Years With Grand Parade in Manhattan*, THE EPOCH TIMES (May 12, 2017), https://www.theepochtimes.com/falun-dafa-marks-25-years-with-grand-parade-in-manhattan_2249599.html, attached as Exhibit D. *See also* Exhibit E, documenting the September 2016 protest that Plaintiff says she was forced to attend. She refers to this occasion many times in her SAC (¶¶ 108, 120, 133, 151, 168, 220).  In ruling on a motion to dismiss, this Court may consider documents that Plaintiff knew about and relied on in bringing suit. *See Cortec Inds., Inc.* v. *Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991).
.

labor. Simply stating that they "knew and/or should have known" of the violations, SAC ¶¶ 134, 135, is obviously insufficient. *Twombly* 550 U.S. at 555. As discussed, when knowledge of a certain fact is an element of a claim, a plaintiff must do more than recite that the defendant knew or should have known it. *See, e.g.,* section II. A, *supra,* citing *Read,* 371 F. Supp. at 92. *See also Samuels v. Fisher,* 168 F.Supp.3d 625, 637-639 (S.D.N.Y. 2016).

The SAC does not allege that the Defendants Organizations were present for any part of a forced labor venture or were even informed of it before or after it occurred. *See, e.g., Nobel* 335 F.Supp.3d at 524, citing *Lawson v. Rubin,* 2018 WL 2012869 at *11 (E.D.N.Y. April 29, 2018), where a sister court dismissed Plaintiff's claims largely for these reasons. Nothing else in the SAC would permit the plausible inference that the Defendant Organizations knew about Cheung's supposed scheme, or recklessly disregarded relevant facts that might have alerted them to it. The best Plaintiff manages to say here, without evidence, is (a) that (presumably all of) the Defendant Organizations employed Cheung "at minimum from May of 2016 until January of 2018," SAC ¶ 130, and (b) that Cheung's supposed misconduct and "enslavement" of Plaintiff lasted for the same period, SAC ¶¶ 139-140. But, as discussed above, *see* section II.B.2,  length of employment is not evidence of an employer's knowledge, actual or constructive, of illegal acts of its employee. Courts in this Circuit have declined to draw inferences of knowledge based on far longer involvement.[11] Therefore, these charges surely do not "nudge … from the purely conceivable to the plausible" the claim that the Defendant Organizations knew that Cheung was engaged in illegal act or acts targeting Plaintiff, as required by *Twombly*, 550 U.S. at 570.

Plaintiff's failure to allege any of the critical statutory elements with the specificity demanded by the Supreme Court is fatal to all aspects of her forced labor claim.

## V.     The RICO Claims Also Fail to Satisfy the Applicable Pleading Requirements.

Plaintiff also alleges a violation of RICO, 18 § 1962(c). To make out such a claim, she must show she "was injured by Defendants' (1) conduct (2) of an enterprise (3) through a

---

[11] *See, e.g., In re SAIC Inc.,* 948 F. Supp.2d at 387.

pattern (4) of racketeering activity." *Cruz v. FXDirect Dealer, LLC*, 720 F. 3d 115, 120 (2d Cir. 2013). An enterprise is a group whose members "share a common purpose to engage in a particular **fraudulent** common course of conduct and work together to achieve such purposes." *First Capital Asset Mgmt.,* 385 F.3d, 159, 174 (2d Cir. 2004) (emphasis added). The SAC does not adequately allege any of these elements against the Defendant Organizations.

A. Plaintiff Has Not Adequately Pleaded that the Defendant Organizations Shared the Common Fraudulent Purpose of Any Alleged Enterprise.

If the supposed "enterprise" is to include any of the Defendant Organizations, Plaintiff must allege that they shared the common purpose of obtaining forced labor from her. She has now failed to do so in three iterations of her Complaint. While the SAC baldly states that the Defendant Organizations "participated" in an "enterprise," by providing perfectly routine and legitimate services to support certain religious events, ¶ 205, it does not contain a single non-conclusory allegation that these services had anything to do with a plan to subject Plaintiff to forced labor (or peonage). *Supra,* section IV.

B. Plaintiff Has Not Adequately Pleaded that the Defendant Organizations Engaged in the Predicate Racketeering Acts Directly or Vicariously.

The criminal conduct required to sustain a RICO claim is sometimes referred to as "'the predicate acts." Plaintiff purports to identify the conduct of the Defendant Organizations constituting the requisite predicate acts, *see, e.g.*, SAC ¶¶ 140, 200, 211, 221, which she contends was criminal by virtue of the TVPRA. But since the SAC contains no sufficient basis for the liability of these Defendants under the TVPRA, for peonage or for forced labor, it therefore likewise fails to meet the requirements of RICO.

As noted, *supra,* section IV.A, the SAC does not adequately allege that the Defendant Organizations engaged in peonage, "[t]he essence of which is compulsory service in payment of a debt." *Bailey v. State of Alabama*, 219 U.S. at 242. And as we have also shown, *supra,* section IV.B, an actionable forced labor claim would require Plaintiff to establish that the Defendant Organizations were perpetrators of a scheme involving coercion or threats, 18 U.S.C. § 1589(a)

or that they benefited from their participation in the scheme and did so knowingly. 18 U.S.C. §
1589(b). Not one of these claims has been adequately alleged.

Nor can the RICO count of the SAC survive on the theory that the Defendant
Organizations violated § 1962(c) vicariously. To state a RICO claim under a vicarious liability
theory, a complaint must allege that a "corporate ... defendant is a central figure in the RICO
scheme." *Trump Tower v. Palazzolo*, 346 F. Supp.3d 432, 459 (S.D.N.Y. 2018). The relevant factors
are: (i) whether a corporate officer had knowledge of or was recklessly indifferent to the unlawful
acts, (ii) the number of high-level employees involved in the racketeering activity, their degree of
participation, and (iii) whether the corporation substantially benefited from the illegal
conduct. *Id.*, 346 F. Supp.3d at 460 (quoting *Makowski v. United Bdb & Joiner of Am.*, 2010 WL
3026510 at *6 (S.D.N.Y 2010)). None of these factors are present; indeed, none are alleged.

Here, nothing in the SAC suggests that a corporate officer of the Defendant
Organizations was involved in, had knowledge of, or was recklessly indifferent to any unlawful
activity, much less that he or she committed a predicate act. Indeed, the pleading does not
mention the name of a single corporate officer. Plaintiff alleges no more than that the individual
defendants "participated in and operated [the enterprise], **through the Defendant
Organizations***,"* that is, as passive conduits*,* "to conduct all of their illicit activities." SAC ¶ 206
(emphasis added). But where an organization serves as a "mere conduit" in the illegal behavior of
others, it is not a central figure in the unlawful scheme, and there is no RICO liability. *See
Amendolare v. Shenkers Int'l Forwarders, Inc.,* 747 F. Supp. 162, 168 (E.D.N.Y. 1990).

C.   Plaintiff Has Not Adequately Pleaded a "Pattern" of Racketeering Activity.

As stated above, Plaintiff's failure to plausibly plead substantive RICO predicates is fatal
to her § 1962(c) claim. In addition to that deficiency, the SAC suffers from another related fatal
flaw: a failure to plead a pattern of racketeering activity.

"The heart of any RICO complaint is the allegation of a pattern of racketeering activity."
*Agency Holding Corp. v. Malley-Duff & Assoc, Inc.*, 483 U.S. 143, 154 (1987). *Grimes v. Freemont Corp.*,

21

785 F. Supp.2d 269 (S.D.N.Y. 2011), citing 18 U.S.C. § 1961(5). A pattern of 'racketeering activity' requires at least two [predicate] acts. 18 U.S.C. § 1961(5).  Here, Plaintiff has not pleaded that the Defendant Organizations carried out even a single predicate act, *see* section B. That failure by itself is fatal to the RICO claim against them.[12]

D.  Plaintiff Has Not Adequately Alleged That the Defendant Organizations Managed the Affairs of any "Enterprise."

The requirement of showing that a RICO defendant was actively engaged in "the operation or management of the enterprise," *DeFalco v. Bernas,* 244 F. 3d 286, 309 (2d Cir. 2001) (citing *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)), is strict. Even taking directions and performing tasks "necessary and helpful to," or providing "goods and services that ultimately benefit the enterprise," is not sufficient. *U.S. Fire Ins. Co., v. United Limousine Serv., Inc.,* 303 F. Supp.2d 432, 451-52 (S.D.N.Y. 2004). RICO liability requires more than that.

Plaintiff offers nothing to suggest that the Defendant Organizations took any part in managing the affairs of any alleged enterprise. The most she alleges is that the Defendant Organizations provided routine commercial services to Falun Gong events, but that is not enough to establish RICO liability. *Hayden v. Paul Weiss, Rifkind, Wharton & Garrison*, 955 F. Supp. 248, 254 (S.D.N.Y. 1997). ("[I]t is well established that the provision of professional services by outsiders, such as accountants, to a racketeering enterprise, is insufficient to satisfy the participation requirement of RICO, since participation requires some part in directing the affairs of the enterprise itself."). In *U.S. Fire Ins.*, 303 F. Supp.2d at 453, the defendant "[did] more than provid[e] services as part of its routine and legitimate business operations," and instead "ma[de]

---

[12] In addition, the alleged predicate acts must be "related, and …[either] amount to or pose a threat of **continuing** criminal activity. *H.J. Inc. v. NW Bell Tel. Co.,* 492 U.S. 229, 240 (1989) (emphasis added). The "so-called continuity requirement can be satisfied either by showing a 'closed-ended' pattern – a series of related predicate acts extending over a substantial period of time – or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool,* 520 F.3d at 183. Insofar as the SAC fails to plead that two or more predicate acts took place over an extended period-of-time or that there was any threat of ongoing criminal activity with respect to the Defendant Organizations, SAC, ¶¶ 198-228, the SAC further fails to demonstrate a "pattern of racketeering activity" and, on this independent basis, fails to state a RICO claim under section 1962 (c).

critical misrepresentations, creat[ed] false documents and … serv[ed] as the point of communication." No such allegation is made against the Defendant Organizations here.

Moreover, a plaintiff must plead that the defendant managed the **illicit** affairs of an enterprise. *See, e.g., Crab House of Douglaston, Inc. v. Newsday, Inc.*, 418 F. Supp.2d 193, 208 (E.D.N.Y. 2006) (plaintiff did not adequately plead that the defendant conducted the enterprise's criminal affairs when it failed to distinguish between his legitimate capacity as a supervisor at the newspaper and his illegitimate role as a director or manager of the enterprise). Here, Plaintiff has not claimed and cannot claim that the Defendant Organizations' ran or managed any illegal enterprise. These defects are fatal to her claim.

E.   Plaintiff Has Not Adequately Alleged That She Was Injured as a Result of Any RICO Violations by the Defendant Organizations.

Finally, Plaintiff does not adequately allege that she suffered injury of a kind that § 1962(c) was designed to deter as a result, much less as a proximate result, of any actions of the Defendant Organizations. To establish that an injury resulted from a RICO violation, a plaintiff must show that the "RICO predicate offense was not only a 'but for' cause of his injury; but was the proximate cause as well," *Hemi v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Securities*, 503 U.S. 258, 268 (1992)). This means that the injury complained of "necessarily is the harm caused by [the] predicate acts." *Hemi* at 13. Here, however, as Plaintiff has not sufficiently alleged a single predicate act, she cannot claim that any harm she suffered was proximately caused by RICO violations with respect to the Defendant Organizations. Moreover, her claim that she cannot gain access to the "money and property" she once held "in China," ¶ 236, appears to attribute her financial losses not to the Defendant Organizations, but to the intervention of the Chinese government. *See Kerik v. Tacopina*, 64 F. Supp.3d 542, 556 (S.D.N.Y 2014) ("when factors other than the defendant's [purported predicate acts] are an intervening direct cause of a plaintiff's injury." (S.D.N.Y. 2014) (citations omitted).

## CONCLUSION

As was true of the original Complaint and of the FAC, this third attempt to comply with the rules of pleading laid out by the United States Supreme Court in *Twombly* and *Iqbal* has failed by a wide margin. No count stated in the current iteration of the Complaint provides "a short and plain statement of the claim showing that the pleader is entitled to relief" against the Defendant Organizations, as required by Rule 8(a)(2), Federal Rules of Civil Procedure. Instead, Plaintiff offers legal conclusions, unsupported recitations of the elements of causes of action, or sheer speculation and unreasonable inferences, none of which entitle her to the relief she seeks. This Court provided Plaintiff two chances to repair the pleading defects, and she has shown that she cannot do so.

The Second Amended Complaint should therefore now be dismissed with prejudice as to the Defendant Organizations.

Respectfully submitted,

/s/
_____

HUMAN RIGHTS LAW
FOUNDATION
By: Terri E. Marsh
1701 Rhode Island Ave., N.W.
Fourth Floor
Washington, D.C. 20036
Tel.: (202-697-3858)

Dated: May 13, 2021                    Email: Terri.marsh.hrlf@gmail.com

24