UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------
JINGYU CHEN,

                Plaintiff,

      -against-

YONG ZHAO CAI, et al.,

                Defendants.
---------------------------------------------------------------

**MEMORANDUM**
**OPINION AND ORDER**

19-CV-05387 (PMH)

PHILIP M. HALPERN, United States District Judge:

      Jingyu Chen ("Plaintiff") commenced this action alleging claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1581 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and New York State common law. (*See* Doc. 93, "SAC"). Defendants Yong Zhao Cai, Qian Y. Cai, Jiang Li, and Kim K. Cheung filed Answers to the Second Amended Complaint. (*See* Doc. 94; Doc. 99). Defendants New York Falun Dafa Association Corp., the Eastern US Buddha's Study (Falun Dafa) Association, Inc., Falun Dafa Information Center, Inc., Friends of Falun Gong Inc., NY Metropolitan Falun Dafa Association Inc., International Falun Dafa Association, Inc., Falun Gong Club of Orange County, Inc., and Upstate Falun Dafa Association, Inc. (collectively, "Defendants"), on the other hand, move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims asserted against them, which motion is the subject of the instant opinion. (Doc. 111; Doc. 114, "Def. Br."; Doc. 114; Doc. 115, "Opp. Br.").

      For the reasons set forth below, the motion to dismiss is GRANTED.

## BACKGROUND

      Plaintiff, while attending university in China, was introduced to Yong Zhao Cai ("Cai") in November 2015. (SAC ¶ 30). The two began an intimate relationship and, in May 2016, Plaintiff traveled from China to the United States at Cai's request. (*Id.* ¶¶ 37, 39-40). Upon her arrival in

the United States, Plaintiff was brought to Cai's home where "it became immediately clear that she was in a state of slavery." (*Id*. ¶ 43). Plaintiff alleges that between May 2016 and when she escaped in January 2018, Cai, together with his sister Qian Y. Cai and his close friends and colleagues Jiang Li and Kim K. Cheung ("Cheung"), engaged in extreme acts of violence, threats, and coercion to obtain, control, and enslave her, including raping, choking, punching and kicking, withholding food and water, confiscating her immigration and identification documents, threatening that if she did not obey she would be reported to federal authorities who would in turn kill her for being in the United States undocumented, and threatening that someone hired by Cai would kill her parents in China. (*Id*. ¶¶ 28, 44, 57, 66-68, 78, 89-91, 103-106). Plaintiff alleges that Cai required her to clean and maintain the interior and exterior of his home, shop for groceries, cook meals, babysit his children, and act as his personal sex slave—engaging in intercourse on demand and video-recorded sex acts—and that Qian Y. Cai, Jiang Li, and Cheung each individually and intentionally contributed to her enslavement. (*Id*. ¶¶ 43, 50, 56, 58, 76, 88, 90, 104-106, 109).

Cai, Qian Y. Cai, Jiang Li, and Cheung are each alleged to be "a subscriber, adherent, believer, and follower" of the Falun Dafa religion. (*Id*. ¶¶ 10, 12, 14, 16).[1] Defendants are corporate entities that Plaintiff alleges "comprise and legally establish the religion and religious organization known as 'Falun Gong' and/or 'Falun Dafa.'" (*Id*. ¶ 17). Plaintiff contends that Cheung was employed by Defendants to recruit and organize "volunteers" to participate in the activities and events of Falun Dafa. (*Id*. ¶¶ 116, 118). Cheung allegedly forced Plaintiff, by the aforementioned

---

[1] Cheung, in his Answer to the Second Amended Complaint, denies Plaintiff's allegation and affirmatively alleges that he is a Falun Gong practitioner, and that "no memberships or participation in any association, corporation or organization is required to be a Falun Gong practitioner." (Doc. 94 ¶ 10). Cai, Qian Y. Cai, and Jiang Li admit Plaintiff's allegation concerning Qian Y. Cai but deny Plaintiff's allegations that Cai and Jiang Li are followers of the religious organization and Falun Dafa religion. (Doc. 99 ¶¶ 12, 14, 16).

threats of physical and sexual violence, to attend and participate in multiple political protests and religious festivals hosted by and for the benefit of Falun Dafa and Defendants. (*Id*. ¶ 119). Plaintiff alleges that participation in these religious protests is considered treasonous by The People's Republic of China. (*Id*. ¶¶ 233-34). She was photographed at a September 2016 protest, the photograph was uploaded to the internet, and as a result, Plaintiff is considered a traitor by her home country and cannot return without facing legal punishment. (*Id*. ¶¶ 120, 174, 234).

The Second Amended Complaint, the operative pleading, sets forth thirteen claims for relief, five of which are alleged against Defendants and which they seek to dismiss: (1) the eighth claim for relief under the TVPRA for peonage (18 U.S.C. § 1581) and forced labor (18 U.S.C. § 1589(b)) on the basis of the doctrine of *respondeat superior*; (2) the ninth claim for relief under the TVPRA for peonage and forced labor; (3) the tenth claim for relief alleging negligent hiring, supervision, oversight, and retention; (4) the eleventh claim for relief alleging negligent security; and (5) the thirteenth claim for relief alleging RICO violations.[2]

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is

---

[2] Plaintiff commenced this action on June 11, 2019, by way of a 57-page, 382-paragraph complaint alleging 28 claims for relief. (Doc. 1). On December 12, 2019, she filed an amended complaint, spanning 489 paragraphs over 76 pages and alleging 29 claims for relief. (Doc. 58). The Second Amended Complaint, filed with the Court's leave on February 2, 2021, presents 237 paragraphs over 35 pages.

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## ANALYSIS

I. Eighth Claim for Relief

Plaintiff's eighth claim for relief alleges that Defendants are vicariously liable for Cheung's misconduct against her under a theory of *respondeat superior*. Plaintiff asserts that by enslaving her and threatening her with physical and sexual violence, Cheung forced her to attend and participate in political protests and religious festivals hosted by and for the benefit of Defendants from May 2016 to January 2018. (SAC ¶¶ 116-126). She alleges, in particular, that she was forced to attend a protest in September 2016 where she was photographed and the photo was uploaded to the internet; that as a result of her involvement with Defendants and the Falun Dafa religion, she cannot return to her home country without facing legal punishment; and that Cheung's conduct was within the scope of his duties as a recruiter and organizer for Defendants. (*Id*.).

To state a claim under the doctrine of *respondeat superior*, "a plaintiff must plead facts showing, among other things, that the tortious conduct causing the injury was undertaken within the scope of the employee's duties to the employer and was thus in furtherance of the employer's interests." *Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014). "Pursuant to this doctrine, the employer may be liable when the employee acts negligently or intentionally, so long as the tortious conduct is generally foreseeable and a natural incident of the employment." *Phillips v. Uber Techs., Inc.*, No. 16-CV-00295, 2017 WL 2782036, at *5 (S.D.N.Y. June 14, 2017). "An employer will not be held liable under the doctrine of *respondeat superior* for actions which were not taken in furtherance of the employer's interest and which were undertaken by the employee for wholly personal motives." *Doe*, 12 F. Supp. 3d at 677 (alteration omitted).

New York courts look to five factors when considering whether a particular act falls within an employee's scope of employment:

> [1] the connection between the time, place and occasion for the act, [2] the history of the relationship between employer and employee as spelled out in actual practice, [3] whether the act is one commonly done by such an employee, [4] the extent of departure from normal methods of performance; [5] and whether the specific act was one that the employer could reasonably have anticipated.

*Haybeck v. Prodigy Servs. Co.*, 944 F. Supp. 326, 329 (S.D.N.Y. 1996) (Sotomayor, J.) (quoting *Riviello v. Waldron*, 391 N.E.2d 1278, 1281 (N.Y. 1979)). "[D]efining carefully the precise act which is the subject of the complaint is crucial." *Id*. Plaintiff complains in the eighth claim for relief that she was forced, through slavery and threats of physical and sexual violence, to attend and participate in political protests and religious festivals.

5

Assuming that Plaintiff has adequately alleged that Cheung was employed by each of the Defendants in the relevant time period,[3] the question is whether Cheung was acting within the scope of his employment with Defendants when he threatened physical and sexual violence against Plaintiff. She contends that Cheung was acting within the scope of his duties as a recruiter and organizer when he forced her into supporting Falun Dafa events in order to benefit the religion. Apart from being conclusory, Plaintiff's allegations do not plausibly state a claim under *respondeat superior*, as the duties of recruiters and organizers simply do not include slavery, sexual abuse, or forced labor.

Even if the misconduct at issue furthered Defendants' organizational aims by bolstering the religion's public appearance and reputation, as alleged by Plaintiff, "the true conduct of which she complains," *Haybeck*, 944 F. Supp. at 330, is her enslavement and Cheung's threats of physical and sexual violence against her. "New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's

---

[3] The Court is not at all convinced that Plaintiff has plausibly pled that Cheung was employed by all eight separate entities between May 2016 and January 2018. Moreover, Defendants proffer the certificates of incorporation for three of the Defendant entities, which establish that: (1) the Falun Gong Club of Orange County, Inc. was not formed until August 28, 2018, and therefore did not have any legal existence at any time relevant to Plaintiff's claims (Doc. 113-1); and (2) the New York Falun Dafa Association Corp. and International Falun Dafa Association, Inc. were incorporated on November 28, 2017, and July 11, 2017, respectively, which post-date the September 2016 protest and most of the misconduct alleged by Plaintiff (Doc. 113-2; Doc. 113-3). The Court can take judicial notice of the articles of organization as they were publicly filed with the New York State Department of State. *See Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014) (the Court, in deciding a Rule 12(b)(6) motion, "is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence"); *GemShares, LLC v. Kinney*, No. 17-CV-00844, 2017 WL 2559232, at *17 (S.D.N.Y. June 2, 2017) (taking judicial notice of articles of organization, as they were publicly filed with the Illinois Secretary of State). Plaintiff, in opposition, argues that Defendants "are legal manifestations of this shadow world organization and 'religion'" and are named "in the only way that we can see for how a lawsuit can be brought against a shadow world entity." (Opp. Br. at 4-5). Plaintiff's failure to respond to Defendants' argument that these three entities could not have had an employment relationship with Cheung in the relevant time period as a matter of law, and her apparent admission that Cheung was employed not by Defendants, but by a religion, serve as independent reasons to dismiss this claim against Defendants.

business, even when committed within the employment context." *Doe*, 12 F. Supp. 3d at 677 (collecting New York cases). Indeed, even if Cheung intended to bolster the religion and Defendants' organizational goals, "there is no 'business purpose' which 'alone' would have compelled" Cheung to sexually assault Plaintiff, threaten physical and sexual violence against her, or aid in Plaintiff's enslavement at Cai's home. *Haybeck*, 944 F. Supp. at 331 (finding employer not vicariously liable for employee's conduct, which arose in part out of employee's intent to further his employer's business through a sexual relationship with plaintiff which "arguably encouraged plaintiff to use more [of employer's] services").

The Court acknowledges Plaintiff's argument that the inquiry is ordinarily one for the jury "because the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations." *Riviello*, 391 N.E.2d at 1281. "However, where a court takes as true all the facts alleged by plaintiff and concludes that the conduct complained of cannot be considered as a matter of law within the scope of employment, then the court must dismiss the complaint for failure to state a claim." *Phillips*, 2017 WL 2782036, at *5 n.2 (quoting *Haybeck*, 944 F. Supp. at 329)).

Accordingly, Plaintiff's eighth claim for relief is dismissed.

II. Ninth Claim for Relief

Plaintiff's ninth claim for relief is brought under the TVPRA against Defendants for peonage in violation of 18 U.S.C. § 1581 and forced labor in violation of 18 U.S.C. § 1589(b). The TVPRA creates a civil cause of action for victims of violation of the statute's criminal provisions. 18 U.S.C. § 1595; *Velez v. Sanchez*, 693 F.3d 308, 324 (2d Cir. 2012). "An individual who is a victim of [peonage or forced labor] may bring a civil action against those who (1) knowingly benefited or received anything of value, (2) through participation in a venture, (3) 'which [the

beneficiary] knew or should have known has engaged in an act in violation of [§§ 1581 or 1589].'" *Taylor v. Children's Vill.*, No. 20-CV-10997, 2021 WL 1581568, at *5 (S.D.N.Y. Apr. 21, 2021) (quoting 18 U.S.C. § 1595(a)).

    A. <u>Peonage</u>

The TVPRA, at 18 U.S.C. § 1581(a), "prohibits the holding of a person in 'a condition of peonage' . . . . [which] is compulsory service in payment of a debt that can be real or artificially created." *United States v. Sabhnani*, 599 F.3d 215, 243 (2d Cir. 2010) (citing *Bailey v. Alabama*, 219 U.S. 219, 242 (1911); *Pierce v. United States*, 146 F.2d 84, 86 (5th Cir. 1944)); *see also Sulastri v. Halsey*, No. 12-CV-03538, 2014 WL 4904718, at *11 (E.D.N.Y. Aug. 21, 2014), *adopted by* 2014 WL 4904527 (E.D.N.Y. Sept. 30, 2014) ("[Peonage] involves the additional element that the involuntary servitude is tied to the discharge of an indebtedness.").

The Second Amended Complaint alleges that Cai, with the aid of Qian Y. Cai, Jiang Li, and Cheung, required Plaintiff to clean and maintain the interior and exterior of Cai's home, shop for groceries, cook meals, babysit his children, and act as his personal sex slave. (SAC ¶¶ 43, 50, 56, 58, 76, 88, 90, 104-106, 109). The pleading is devoid of any allegation that this compulsory service had any connection to any indebtedness to anyone (whether real or artificially created), which is fatal to this claim. Moreover, Plaintiff, in opposition, fails to respond to Defendants' arguments for dismissal of the peonage claim against them. Accordingly, Plaintiff's ninth claim for relief to the extent it claims a violation of 18 U.S.C. § 1581 is dismissed on the additional basis that the claim has been abandoned. *Allegrino v. Ruskin Moscou Faltischek, P.C.*, No. 19-CV-08900, 2021 WL 429121, at *5, *8 (S.D.N.Y. Feb. 8, 2021), *aff'd*, 2021 WL 5500084 (2d Cir. Nov. 24, 2021).

B.  Forced Labor

The TVPRA imposes civil liability on a person who obtains labor through force or who knowingly benefits from a venture engaged in forced labor. 18 U.S.C. § 1589. "Forced labor" as defined by the statute, includes coercion through "force, threats of force, . . . serious harm or threats of serious harm . . . or . . . any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm" such that "a reasonable person of the same background and in the same circumstances" as the victim would be coerced "to perform or to continue performing labor or services in order to avoid incurring that harm." *Id.*; *see also Taylor*, 2021 WL 1581568, at *4.

Plaintiff presses her claim of forced labor against Defendants under 18 U.S.C. § 1589(b), which imposes liability on anyone who "knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in [Section 1589(a)]."  This section further requires that the defendant must "know[ ] or [be] in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means." *Id*.

Plaintiff's allegations fail to plausibly state a claim that Defendants "knowingly benefit[ted]" from their purported participation in a forced labor venture. As regards the "benefit" element, the Second Amended Complaint repeats in a conclusory fashion that her forced attendance at Falun Dafa activities was "for the benefit of . . . Defendants . . . ." (SAC ¶¶ 119, 121, 132, 141). Plaintiff contends the benefit was promoting the legitimacy of the religion, which in turn "bolstered the Defendant Organizations." (Opp. Br. at 17-18; SAC ¶¶ 122, 142). Plaintiff does not plausibly allege how her attendance in particular "bolstered" Defendants' business, nor does she expound upon this contention in her opposition on this motion.

9

As regards the "knowledge" element, the relevant allegations are that Cheung was employed by Defendants between May 2016 and January 2018, that Plaintiff was enslaved for that period of time, Cheung's misconduct lasted for that period of time, and that the Falun Dafa protests, festivals, and activities were public events. (SAC ¶¶ 116, 119, 134, 140). These allegations do not plausibly suggest that Defendants knew that Plaintiff was enslaved, nor that Cheung used physical and sexual violence to enslave her, nor that he used threats of physical and sexual violence to force her to participate in Falun Dafa activities. Plaintiff, in her opposition, simply repeats the allegations in the pleading, contending that these speculative and conclusory allegations "raise the reasonable expectation that discovery will reveal evidence of the alleged wrongdoing." (Opp. Br. at 18).

Because Plaintiff has not transformed her claim "from conceivable to plausible," *Twombly*, 550 U.S. at 570, the ninth claim for relief under the TVPRA is dismissed.[4]

III. Tenth Claim for Relief

Plaintiff's tenth claim for relief seeks to hold Defendants liable for negligent hiring, supervision, oversight, and retention of Cheung. This common law claim provides a remedy "where an employee does not act within the scope of his employment . . . when the employer has either hired or retained the employee with knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm." *Haybeck*, 944 F. Supp. at 332. To state such a claim under New York law, a plaintiff must, in addition to alleging the standard elements of

---

[4] Plaintiff also does not sufficiently allege that Defendants obtained her labor or services. Her allegation against Defendants is that she was coerced by Cheung "to attend and participate in" protests, events, and festivals. (*See, e.g.*, SAC ¶¶ 119-22). Plaintiff does not explain how such activities could be regarded as a form of "labor" or "services" described in 18 U.S.C. § 1589(a). Although not alleged or argued by Plaintiff, assuming alternatively that her theory of the labor or services contemplated by the statute was the housework, babysitting, grocery shopping, cooking, and acting as a sex slave for Cai, she does not explain how Defendants "participated" in such a venture, nor that they benefitted from or had any knowledge of such misconduct.

10

negligence, show that: (1) the tort-feasor and the defendant were in an employee-employer relationship; (2) the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels. *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004); *Doe*, 12 F. Supp. 3d at 680; *James Biggs v. City of New York*, No. 08-CV-08123, 2010 WL 4628360, at *9 (S.D.N.Y. Nov. 16, 2010).

Plaintiff alleges that Cheung is an organizer and coordinator for Falun Dafa, "organizing" people for political and religious events and activities on behalf of Defendants, and that Defendants knew of the people he organized to participate in these events, including her. (SAC ¶¶ 148-159). Plaintiff further alleges that Defendants knew of Cheung's use and threats of use of physical and sexual violence to organize Plaintiff and other individuals in situations similar to her; as well as his use of membership and involvement with Falun Dafa as a basis to file false asylum applications. (*Id*.). The basis for this purported knowledge is Defendants' alleged status as his employers and/or supervisors during the period of time she alleges she was enslaved by Cai. (*Id*.; Opp. Br. at 12-13).

Even assuming that Cheung and Defendants were in an employee-employer relationship—an issue the Court need not and does not resolve on this motion—Plaintiff fails to adequately allege claims of negligent hiring, supervision, oversight, and retention. "Under New York law, it is not sufficient for Plaintiff to allege generally that the Defendant failed to exercise care in the screening, hiring, or supervision of employees. Plaintiff must also allege that, had the Defendant exercised the requisite care, it would have discovered the facts that made the employee at issue unsuitable to hire or retain." *Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 361-62 (S.D.N.Y. 2021). New York courts, therefore, "have held in employee sexual misconduct cases that an employer is only liable for negligent supervision or retention if it is aware of specific prior acts or allegations against the

employee." *Doe*, 12 F. Supp. 3d at 680. "Such claims require 'specific allegations of the employee's past wrongdoing' [and, i]n the absence of such allegations, there is no basis to believe that the Defendants conduct in the hiring, retention or supervision of the employee was the cause of Plaintiff's injury." *Uber Techs., Inc.*, 551 F. Supp. 3d at 362 (quoting *Doe*, 12 F. Supp. 3d at 682).

The Second Amended Complaint lacks the requisite facts to state this claim. The pleading is devoid of any factual allegation regarding Cheung that Defendants knew or could have known with the exercise of care that Cheung posed a danger to Plaintiff. Plaintiff relies on the allegations that Defendants "knew of [Cheung's] . . . methods of organization" and "knew of [Cheung's] activities because they oversee [him] and he conducted them continuously from May of 2016 until January 2018, the period within which [Plaintiff] was exposed to [Cheung]." (Opp. Br. at 12-13). These allegations are conclusory and speculative as to Defendants' knowledge of Cheung's misconduct.

The absence of any non-conclusory allegation that Defendants knew, or could have known, facts about Cheung that should have led them to know of the risk that Cheung would engage in the use and threats of use of physical and sexual violence is "fatal to Plaintiff's negligence claim and warrants dismissal." *Uber Techs., Inc.*, 551 F. Supp. 3d at 363; *Doe*, 12 F. Supp. 3d at 680; *see also Lawton v. Town of Orchard Park*, No. 14-CV-00867, 2017 WL 3582473, at *13 (W.D.N.Y. Aug. 18, 2017); *Matthews v. City of New York*, No. 15-CV-02311, 2016 WL 5793414, at *12 (S.D.N.Y. Sept. 30, 2016); *Doe v. Montefiore Med. Ctr.*, No. 12-CV-00686, 2013 WL 624688, at *3 (S.D.N.Y. Feb. 19, 2013), *aff'd*, 598 F. App'x 42 (2d Cir. 2015); *Haybeck*, 944 F. Supp. 326, 332 (S.D.N.Y. 1996). Simply put, "[w]here a defendant's knowledge . . . is an element of a tort

claim, a bare assertion that a defendant 'knew or should have known' of that fact or circumstance is insufficient to state a claim." *Read v. Corning Inc.*, 371 F. Supp. 3d 87, 92 (W.D.N.Y. 2019).

Further, while it is theoretically possible, as Plaintiff suggests, that discovery may reveal "evidence of wrongdoing" (Opp. Br. at 13), thereby potentially substantiating notice of Cheung's propensity for the type of misconduct alleged, Plaintiff's belief in this regard is purely speculative. There is no allegation in the pleading to support that type of assertion beyond rank conjecture and surmise. Were this type of argument viable, very few complaints would be dismissed at this juncture because discovery *might*, theoretically, reveal evidence neither known nor alleged.

Accordingly, Defendants' motion to dismiss the tenth claim for relief is granted.[5]

IV.     Eleventh Claim for Relief

The eleventh claim for relief alleges that Defendants had a duty to provide security for the participants of their protests, parades, and religious festivals and breached that duty to Plaintiff. To state a claim for negligent security, a plaintiff must plead that (1) the owner or occupier of the premises where the injury occurred owed a duty of care, (2) the duty was breached, (3) injury resulted from the breach, and (4) the injury was foreseeable. *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 569-71 (S.D.N.Y. 2010); *Schaeffer v. Vera Wang Bridal House, Ltd*., 64 F. Supp. 2d 286, 292-93 (S.D.N.Y 1999).

Plaintiff urges the Court's reliance on *Plante v. Hinton*, 706 N.Y.S.2d 215 (N.Y. App. Div. 2000), for the proposition that Defendants, as parade organizers, owed Plaintiff, as a parade participant, a duty of care which they breached. (Opp. Br. at 14-16). That case was dismissed

---

[5] Because the Court concludes that Plaintiff does not meet the second element of her claim, it need not and does not reach the issue raised by Plaintiff concerning the third element of the claim; to wit, that the law does not require pleading that the tort was committed on the employer's premises or with the employer's chattels. (*See* Opp. Br. at 10-12). The Court simply notes that Second Circuit case law is clear on the pleading requirements for negligent hiring and supervision claims under New York law, as set forth *supra*.

13

because the court found that the defendant did not have the ability to control the conduct of participants or spectators during a parade. *Plante*, 706 N.Y.S.2d at 217. A possessor of real property is not an insurer of the safety of all those who enter onto his premises. Thus, "to establish the existence of a duty on his or her part to take minimal protective measures, it must be shown that he or she either knows or has reason to know from past experience that there is a likelihood of conduct on the part of third persons which is likely to endanger the safety of the visitor." *Henry-Lee*, 746 F. Supp. 2d at 570 (cleaned up). "Indeed, this is the case even where 'there is an extensive history of criminal conduct on the premises.'" *Id*. (quoting *Iannelli v. Powers*, 498 N.Y.S.2d 377, 380 (App. Div. 1986)).

Plaintiff asserts that the events in which she was forced to participate took place within a zone of Defendants' control and under the control of their organizers, coordinators, staff, employees, and/or agents. (SAC ¶ 169). Even assuming, without deciding, that the foregoing allegation is sufficient to suggest that Defendants owed a duty of care to Plaintiff, the claim does not withstand the motion to dismiss. Like her tenth claim for relief, Plaintiff's allegations do not sufficiently allege foreseeability—she has not alleged any non-conclusory facts suggesting Defendants either knew or had reason to know from past experience that there was a likelihood of conduct on the part of third persons, such as Cheung, that would endanger Plaintiff's safety. *See Henry-Lee*, 746 F. Supp. 2d at 570. Rather, Plaintiff hypothesizes that Defendants knew or had reason to know that victims of human trafficking and slaves were being coerced into participating in the events by organizers in their employ because they organized their own events and therefore "they should know whether or not they are employing slave labor." (*Id*. ¶ 171; Opp. Br. at 16).

The allegations fail to state a claim upon which relief can be granted and accordingly, the eleventh claim for relief is dismissed.

V. <u>Thirteenth Claim for Relief</u>

The thirteenth claim for relief, asserted under RICO, alleges that Defendants agreed to, conducted, and participated in the conduct of an enterprise through a pattern of racketeering activity and for the unlawful purpose of intentionally exploiting and victimizing Plaintiff. (SAC ¶ 200). "'A private cause of action under RICO requires that the plaintiff allege: (1) the defendant's violation of 18 U.S.C. § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation.'" *Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171, 179 (S.D.N.Y. 2020) (quoting *Fertitta v. Knoedler Gallery, LLC*, No. 14-CV-02259, 2015 WL 374968, at *5 (S.D.N.Y. Jan. 29, 2015) (internal quotation marks omitted)).

The first element requires a plaintiff to allege "the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Id*. at 179-80 (quoting *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)).

Plaintiff pleads that the Falun Dafa religion is an enterprise and an "association in fact" whose activities impact interstate commerce and "spawned" Defendants. (SAC ¶¶ 201, 203). She alleges that Defendants participated in the Falun Dafa enterprise by simply being formed as corporate entities, and by providing physical office locations as well as tangible legal means to organize individuals, organize and coordinate physical events and activities, engage in fundraising, and serve as conduits for the allocation, appropriation, or transfer of money and/or assets. (*Id*. ¶ 205). Plaintiff alleges that Defendants knew and had reason to know of Cheung's commission of predicate acts of racketeering and asserts that Defendants "continuously violated [the TVPRA] from November of 2015 until January of 2018, intentionally and specifically

15

targeting [Plaintiff]," in what she asserts is a pattern of racketeering activity "outlined throughout" the Second Amended Complaint. (*Id*. ¶¶ 207, 221). As a result, Plaintiff is now considered a criminal and traitor by the Chinese Government, and as such has lost her Chinese citizenship, the college education she received in China, and all the property and money she maintained in China. (*Id*. ¶ 222). She alleges further that she suffered a loss of the money and property she brought to the United States, as well as income and wages by being in a state of slavery, and that she otherwise suffered severe injury. (*Id*. ¶¶ 223-236).

Defendants argue that Plaintiff fails to state a RICO claim against them because she does not plead any predicate act committed by them or vicarious liability for the predicate acts of others, the existence of a pattern of racketeering activity, that Defendants had anything to do with a supposed "enterprise," or an injury resulting from Defendants' actions. (Def. Br. at 19-23). Because the Court agrees that Plaintiff has not sufficiently alleged the first element of a RICO claim, i.e., Defendants' violation of 18 U.S.C. § 1962, this claim must likewise be dismissed.

"The heart of any RICO complaint is the allegation of a pattern of racketeering activity." *Agency Holding Corp. v. Malley-Duff & Assoc, Inc*., 483 U.S. 143, 154 (1987); *Grimes v. Freemont Corp*., 785 F. Supp.2d 269 (S.D.N.Y. 2011) (citing 18 U.S.C. § 1961(5)). A pattern of 'racketeering activity' requires at least two [predicate] acts. 18 U.S.C. § 1961(5). The statute provides a list of criminal acts that can constitute predicate acts of racketeering, which includes TVPRA violations under 18 U.S.C. §§ 1581-1592, relating to peonage, slavery, and trafficking in persons. *See* 18 U.S.C. § 1961(1).

The conduct that Plaintiff purports to identify as the requisite predicate acts by Defendants are their alleged violations of the TVPRA. (*See, e.g*., SAC ¶¶ 140, 200, 211, 221). As discussed *supra*, however, the Court finds that Plaintiff has not plausibly alleged a claim against Defendants

16

under the TVPRA and thus, she fails to plead a predicate act committed by Defendants under RICO. Plaintiff's alternative theory, Defendants' vicarious liability for the predicate acts of others, also falls short. Indeed, in this Circuit, vicarious liability is generally not imposed under RICO "unless the corporate . . . defendant is a central figure in the RICO scheme." *Makowski v. United Bhd. of Carpenters & Joiners of Am.*, No. 08-CV-06150, 2010 WL 3026510, at *6 (S.D.N.Y. Aug. 2, 2010) (alterations and internal quotation marks omitted); *see also Trump Tower v. Palazzolo*, 346 F. Supp. 3d 432, 459 (S.D.N.Y. 2018). "[T]hus, plaintiffs seeking to impose vicarious liability must, at a minimum, show that a corporate officer had knowledge of or was recklessly indifferent toward the unlawful activity." *Bd. of Managers of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo*, 346 F. Supp. 3d 432, 459 (S.D.N.Y. 2018) (cleaned up).

Plaintiff alleges that Cai, Qian Y. Cai, Jiang Li, and Cheung "participated in and operated [the enterprise], through [Defendants] in order to conduct all of their illicit activities." (SAC ¶ 206). But this allegation, together with all of Plaintiff's non-conclusory allegations against Defendants, suggests no more than Defendants' status as a passive conduit in the illegal activity of others, who are not even alleged to be corporate officers or high-level employees of Defendants. Where an organization serves as a "mere conduit" in the illegal behavior of others, it is not a central figure in the unlawful scheme. *See Amendolare v. Shenkers Int'l Forwarders, Inc.*, 747 F. Supp. 162, 168 (E.D.N.Y. 1990).[6] The Second Amended Complaint is devoid of allegations suggesting that a corporate officer of any of Defendants was involved in, had knowledge of, or was recklessly indifferent to any unlawful activity, much less that he or she committed a predicate act.

---

[6] Plaintiff argues in opposition that a determination of *respondeat superior* liability under RICO is fact intensive, citing *Gruber v. Prudential-Bache Sec., Inc.*, 679 F. Supp. 165, 181 (D. Conn. 1987), and again urging "that discovery will reveal evidence of wrongdoing." (Opp. Br. at 21-22). Even in *Gruber*, however, a RICO claim was dismissed on a Rule 12(b)(6) motion as to the defendant corporation where the pleading failed to allege facts establishing the defendant corporation as a "central figure" in the alleged racketeering activity. *Gruber*, 679 F. Supp. at 181-82.

17

Plaintiff's failure to allege a pattern of racketeering activity by Defendants is fatal to this claim. Accordingly, Plaintiff's thirteenth claim for relief is dismissed as alleged against Defendants.

## **CONCLUSION**

For the reasons outlined above, Defendants' motion to dismiss is GRANTED. The Clerk of the Court is respectfully directed to:

(1) terminate the motion sequence pending at Doc. 111; and

(2) terminate New York Falun Dafa Association Corp., The Eastern US Buddha's Study (Falun Dafa) Association, Inc., Falun Dafa Information Center, Inc., Friends of Falun Gong Inc., NY Metropolitan Falun Dafa Association Inc., International Falun Dafa Association, Inc., Falun Gong Club of Orange County, Inc., and Upstate Falun Dafa Association, Inc. as parties to this action.

SO ORDERED:

Dated:   White Plains, New York
         March 28, 2022

_____
PHILIP M. HALPERN
United States District Judge